# CASES

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

### CITY OF HELENA v. HELENA WATERWORKS CO.

(Circuit Court of Appeals, Ninth Circuit. March 9, 1903.)

#### No. 891.

**1. STIPULATIONS—SCOPE AND EFFECT.**

In a suit to enjoin a city from constructing waterworks, a stipulation by the parties that the defendant intended to construct such works and to raise the funds therefor "in the manner provided by law," and would do so unless it was adjudged that it had no legal right to construct such works, eliminates any question as to the legality or regularity of the proceedings taken by the city to raise the funds for the work.

**2. MUNICIPAL CORPORATIONS—CONSTRUCTION OF FRANCHISE.**

A public grant of franchises or privileges is to be strictly construed against the grantee and in favor of the public, and nothing will pass except what is granted in clear and explicit terms.

**3. SAME—GRANT OF FRANCHISE TO WATER COMPANY—CONSTRUCTION.**

By an ordinance a city granted to a water company the right to construct and maintain for 20 years water mains and pipes in the streets, to supply the city and its inhabitants desiring to purchase the same with water, with a proviso that nothing therein should be so construed as to give the company "the exclusive right of occupancy of the streets * * * of said city with water mains and pipes, or the exclusive right of conveying and distributing and selling the same throughout the city, or of furnishing the same to said city, except as hereinafter set forth." It was further provided that nothing therein should conclude the city "from the construction or maintenance of sewer works, or other works or plants of a public nature"; and the statute of the state authorized cities to erect and own waterworks and to create a public indebtedness therefor. There were further provisions in the ordinance requiring the company to provide a supply of water sufficient for the population of the city "during the full term of five years," and providing for the payment of hydrant rentals by the city for five years. *Held* that, in view of such reservations, it was not an implied condition of the grant that the city would not construct waterworks of its own, or enter into competition with the company, during the term of the franchise; nor was there any contract therein which prevented it from supplying water for its own use and for the use of its inhabitants after the expiration of five years.

---

¶ 2. See Franchises, vol. 23, Cent. Dig. § 2.

122 F.—1

Appeal from the Circuit Court of the United States for the District of Montana.

This action was commenced in the United States Circuit Court for the District of Montana, on April 12, 1901, by the Helena Waterworks Company, a corporation organized and existing under the laws of the state of New Jersey, to restrain the city of Helena, in the state of Montana, from erecting, constructing, purchasing, or otherwise acquiring a water plant and system, and from acquiring a water supply, to be owned and controlled by said city, for the purpose of furnishing said city and its inhabitants, or any thereof, with water, except the water plant, system, and supply of the complainant, and from engaging in the business of furnishing said city and its inhabitants, or any thereof, with water, except in the event it acquires the plant, system, and supply of the complainant, and from incurring any indebtedness or expending any money therefor. It is alleged in the complaint that the city of Helena is a municipal corporation, organized and existing under and by virtue of the laws of the territory and state of Montana, that the complainant is a taxpayer in said city, and that the matter in dispute exceeds in value the sum of $2,000, exclusive of interest and costs. It is alleged that in January, 1890, the city council of Helena passed, adopted, and published, as by law required, Ordinance No. 248; that this ordinance was approved by the mayor of said city on the 15th day of January, 1890. It is further alleged that within thirty days after the passage of said ordinance the Helena Consolidated Water Company complied with all and singular the provisions and requirements of said ordinance, and that in doing so it expended a large amount of money, aggregating several hundred thousand dollars, in acquiring a water supply and a system through and by which to furnish water to said city and its inhabitants, as by said ordinance required, and that said system and supply were accepted by the city of Helena as complying with the requirements of said ordinance. The complaint sets forth the proceedings, sale, and transfer of the property by which the complainant became the owner of the water supply, plant, system, and property of the Helena Consolidated Water Company, including all rights, franchises, and privileges granted and conferred by Ordinance No. 248. The bill further alleges, in substance, that in the years 1899, 1900, and 1901 the city of Helena adopted certain ordinances and took certain proceedings for the purpose of acquiring a water plant and system of its own, and it is charged that the said city will engage in the business of furnishing water to the city of Helena and its inhabitants unless restrained by the court; that said ordinances and proceedings impair the obligations of the contract between the complainant and said city of Helena, in violation of section 11 of article 3 of the Constitution of the state of Montana, and of section 10 of article 1 of the Constitution of the United States; that the property of the complainant, consisting of said water plant and system, franchise, and contract, will be confiscated and taken without just compensation being first paid therefor, in violation of section 14 of article 3 of the Constitution of the state of Montana; and that said property will be taken without due process of law, in violation of the fourteenth amendment to the Constitution of the United States.

Ordinance No. 248, so far as its provisions are material to this case, is as follows:

"Section 1. There is hereby granted to the Helena Consolidated Water Company, and its successors and assigns, for the full term of twenty years from the passage hereof, the license and franchise of laying and maintaining water mains and pipes in and through all of the streets, alleys, avenues, and public grounds of the city of Helena for the purpose of conveying and distributing water throughout the said city, and for the purpose of selling the same to all persons, bodies, or corporations within the said city desiring to purchase the same, and to said city for fire, sewerage, and other purposes, in case said city desires to purchase the same, subject, however, to the provisions of this ordinance hereinafter contained, establishing maximum rates, and generally to have and exercise all the rights, privileges, and franchises necessary to the proper and successful furnishing of water to the inhabitants of said city if required: provided, however, that nothing herein contained shall be so con-

strued as to give to the said Helena Consolidated Water Company, or its successors or assigns, the exclusive right of occupying the streets, avenues, alleys, and public grounds of said city with water mains and pipes, or the exclusive right of conveying, distributing, or selling the same throughout the said city, or of furnishing the same to said city, except as hereinafter set forth.

"Sec. 2. For the purpose of laying, repairing, keeping, and maintaining such water mains and pipes there is hereby granted to said Helena Consolidated Water Company, and to its successors and assigns, the right and privilege of digging ditches and making excavations in and upon any and all streets, avenues, alleys, public grounds, and thoroughfares of the city: provided, that it or they shall, without unreasonable delay, restore the same to as good condition as they were before the said excavations were made, and remove all earth, sand, rubbish, and other material.

"Sec. 3. All pipes and mains, including service pipes connected therewith, shall be laid at the depth of five feet below the established grade, and shall be laid under the supervision of the street commissioner of said city as to grade and location in streets; and all repairs and extensions of such pipes and mains shall be done under the supervision of said street commissioner as to grade and location in streets. Nothing contained herein shall preclude said city of Helena from regrading or changing the grade of any street or streets within said city, or from the construction or maintenance of sewer work, or other works or plants of a public nature, or from letting, giving, or granting any franchises, rights or easements to any person or persons, corporation or corporations, whomsoever, so long as such franchises, rights, and easements do not interfere with the franchises, rights, and easements hereby granted. And the said Helena Consolidated Water Company must and shall look solely and exclusively to the person or persons, corporation or corporations, to whom such franchises, rights, and easements have been given by said city, for any and all damages the said Helena Consolidated Water Company may sustain by reason of any interference with any of its pipes, mains, or hydrants, or any exposure of the same caused by such person or persons, corporation or corporations.

"Sec. 4. The works hereby contemplated shall be so constructed and maintained as to interfere as little as possible with the property of others; and any damage resulting from said erection, construction, and operation thereof shall be repaired and paid for by the said Helena Consolidated Water Company, or its successors or assigns.

"Sec. 5. It is hereby provided that in no case shall the mains and pipes laid and maintained under the provisions of this ordinance in any manner interfere with any mains or pipes legally laid in said streets so as to injure or obstruct the use thereof; nor shall such pipes or mains interfere or obstruct any sewer now in said streets, nor shall there be any interference with mains, pipes, or sewers which may be hereafter authorized to be laid or constructed by or under the authority of said city of Helena by mains hereafter laid by the said Helena Consolidated Water Company, or its successors or assigns, and at all places and points in the said city where said mains and pipes approach gas mains or pipes there shall be at least six inches of earth between the same.

"Sec. 6. The said Helena Consolidated Water Company shall furnish and provide a full, ample, and sufficient supply of good, pure, wholesome, and clear water for the use and wants of the inhabitants of said city, and to provide said city with water for fire, sewerage (maintenance and construction), and for other purposes; and such supply shall be full, ample, and sufficient for the present population of said city, and for the future population of the said city as the same may be from time to time during the full term of five years; and said water shall be pure, wholesome, and free from animal, vegetable, or mineral substances, such as would render it unhealthy or unfit for domestic use.

"Sec. 7. The pressure in pipes and mains at the level of the first floor of the courthouse of Lewis and Clarke county, in said city, and at all other points of equal height, shall be maintained at not less than sixty pounds to the square inch if reservoir works shall be used; and if the direct pressure

system shall be used, sixty pounds to the square inch fire pressure, and forty pounds to the square inch ordinary pressure, shall be maintained at said points and all other points of equal height."

Section 8 describes the streets on which the water company shall lay mains or provide for at its own cost.

"Sec. 9. The said Helena Consolidated Water Company shall place down and connect with the twenty miles of mains herein provided for, at points to be designated by the city council, or a committee thereof, two hundred hydrants, and shall maintain said hydrants during the continuance of this contract. Said hydrants shall have double nozzles and shall be nonfreezing and of the latest and most improved pattern, and all connections of such hydrants with the mains shall be of not less than four inches in diameter: provided, that if the contractor use any system of pipes and hydrants now in said city and formerly belonging to the Helena Water Company, such hydrants need not be changed or renewed, and said council shall not change or relocate the same, but said hydrants shall be considered as having been located by the said city council or committee thereof under the provisions of this ordinance. The location of mains and hydrants to complete the twenty miles of mains, and the two hundred hydrants provided for in this ordinance, shall be made by the city council when the said water company is ready to erect the same without delay or loss to the said water company.

"Sec. 10. The said Helena Consolidated Water Company shall lay and maintain, in addition to the twenty miles of mains hereinbefore specified, such mains, of such sizes, at such times, and upon such streets as the city council shall from time to time direct, which said work shall be commenced and prosecuted to completion with diligence and without unreasonable delay, and shall place and maintain one hydrant for each one-tenth of a mile on such additional mains, if the same shall be of the diameter of six inches or more, or if the same shall be of the diameter of less than six inches, then one hydrant for each one-seventh of a mile, said hydrants to be of the pattern above specified; no hydrant to be placed on any pipe of less than four inches in diameter.

"Sec. 11. All water which may be required by said city of Helena for the use of any and all buildings owned and occupied by said city for municipal purposes, and also all water necessary for street sprinkling purposes, in said city, shall be furnished by the said Helena Consolidated Water Company without cost or charge to said city: provided, however, that in case the said city shall hereafter desire to use any water for street sprinkling purposes, the same must be taken from the mains of the said Helena Consolidated Water Company by means of standpipes erected at the cost and expense of said city, at such point or points as may be necessary upon the lines and mains of said company, and that said city shall not have the right to use any of the hydrants of the said company for the purpose of obtaining water for street sprinkling purposes.

"Sec. 12. In case of unavoidable accident or breakage of machinery, due time shall be given to the said Helena Consolidated Water Company to repair the damages; but it shall receive no pay from any person or corporation for any time during which it fails to furnish water for the causes in this section stated.

"Sec. 13. The works hereinbefore provided for, and the water system connected therewith, shall be completed and in readiness for the conveyance and distribution of water throughout the twenty miles of mains hereinbefore provided for, on or before the 1st day of July, 1890.

"Sec. 14. The mayor and any committee of said council of said city, or any officer or person authorized by said council, shall at all times have free access to the entire works and system of the said Helena Consolidated Water Company, for the purpose of inspecting and examining, or testing, the same, or any part or portion thereof.

"Sec. 15. Said Helena Consolidated Water Company shall, from and after the 20th day of January, 1890, until said system is completed, in accordance with the terms of this contract, furnish the said city of Helena with water for fire, sewerage, and other purposes, through the hydrants included in the contract between the said city of Helena and the Helena Water Company

and the hydrants on such extensions as have been or may be ordered by the city council of said city, at the price herein provided for; but it shall not be required to complete its system for the conveyance and distribution of water through the twenty miles of mains herein provided for before the first day of July, 1890."

Section 16 states the charges to be made for water furnished by the said water company to any persons.

"Sec. 17. The said Helena Consolidated Water Company shall make no charge for tapping mains for the connection of service pipes therewith, except the actual cost of labor and materials required, and in no case to exceed two dollars and fifty cents for four-inch mains, three dollars for six-inch mains, three dollars and fifty cents for eight-inch mains, four dollars for ten-inch mains, and four dollars and fifty cents for twelve-inch mains. Such connection shall be made at the cost of the applicant by any plumber whom he may employ, but not, however, until such applicant shall have procured a permit for such connection from the said Helena Consolidated Water Company: provided, always, that said company shall not refuse to permit connections to be made by or to sell or deliver water to any persons who shall offer to pay for the same, and shall comply with the provisions of this ordinance, and with such regulations as may be from time to time prescribed by the city council of said city, and the reasonable rules and regulations of said company.

"Sec. 18. The said Helena Consolidated Water Company shall have the right to put in a stop-cock on each service pipe, below the sidewalk near the curb, at its own proper cost and expense, and shall box the same securely and place the cover flush with the sidewalk, and may turn off the water from any premises when the water rates are not paid within fifteen days after the same shall have become due, and when said consumer has failed to comply with any reasonable rule or regulation of said company, but the said company shall not place any self-closing faucet or water-bib upon any service pipe without the consent of the owner thereof.

"Sec. 19. No person or persons, excepting the mayor and fire marshal, or those acting under their authority, or the authority of the said city council, and the agents and employees of the said water company, shall meddle with or use any of the hydrants provided for in this ordinance, and any person violating this provision shall be deemed guilty of a misdemeanor, and, upon conviction thereof, be fined not less than five dollars nor more than fifty dollars. Said hydrants shall only be used for fire and sewerage purposes.

"Sec. 20. From and after the 20th day of January, 1890, the said Helena Consolidated Water Company shall keep and maintain in the storage reservoir formerly belonging to the Helena Water Company and commonly known as the 'Woolston Reservoir,' or in the reservoir formerly belonging to Helena Water Company and commonly known as the 'Hale Reservoir,' a depth of not less than six feet of water, and after the first day of July, 1890, shall keep and maintain in both of said reservoirs a depth of not less than six feet of water.

"Sec. 21. There is hereby appropriated out of the yearly revenues of the said city of Helena, for the use and benefit of the said Helena Consolidated Water Company, its successors and assigns, during the full term of five years from and after the 20th day of January, 1890, the following sums of money, to wit: Out of the general fund of said city the sum of twenty dollars per year for each hydrant required by this ordinance to be kept and maintained by the said Helena Consolidated Water Company on the twenty miles of mains provided for in this ordinance, and for the use of the water through said hydrants by said city for the purpose of sewerage, and the sum of sixteen dollars and seventy-five cents per year for each additional hydrant and water as herein provided for, for the same purposes. Out of the fire department fund of said city the sum of eighty dollars per year for each hydrant required by this ordinance to be kept and maintained by said Helena Consolidated Water Company on the said twenty miles of mains provided for in this ordinance, and for the use of the water through said hydrants by said city for the purpose of extinguishing fires and for the fire department, and the sum of fifty-eight dollars and seventy-five cents per year for each addi-

tional hydrant and water as herein provided for, for the same purpose. And it is hereby made the duty of said city council, during the said term of five years, to levy annual taxes under the provisions of the charter of said city authorizing the levy of taxes for general purposes and for fire department purposes sufficient in amount to provide funds to meet the appropriations hereby made. For the purpose of carrying out the provisions of this section, the mayor and city clerk are hereby authorized, upon allowance by the city council, to draw warrants on the above funds for the above amounts and to pay the same unto the said Helena Consolidated Water Company, its successors or assigns, at the end of each month: provided, however, that if the said company shall fail to comply with the requirements herein contained concerning the pressure and depth of water in the reservoirs to be maintained, it shall forfeit all claims for payment for the month during which such failure occurs; and if such failure shall continue for more than three days after written notice by the city, then the said company shall pay a further forfeit of five hundred dollars per day, which said forfeit shall be paid before said company shall receive any further payment from said city in pursuance of the provisions of this ordinance. This provision, however, shall not apply to cases where the failure occurs through accidents, as provided in this ordinance.

"Sec. 22. In the use of water under this ordinance for the purpose of flushing sewers said Helena Consolidated Water Company shall furnish water for such number of flushing tanks as said city council may from time to time require, but said flushing tanks shall be so set and regulated that the same will dump or discharge themselves but twice in every twenty-four hours.

"Sec. 23. Nothing contained in this ordinance shall in any manner interfere with or curtail the rights of the said Helena Consolidated Water Company to prosecute any action or maintain any claim it may have against any person or persons, corporation or corporations, which shall break, injure, or destroy any hydrants or other property belonging to said company, including such damage or compensation as said company may be entitled to by reason of the loss or want of water occasioned by such break, injury, or destruction of the said hydrants.

"Sec. 24. Said Helena Consolidated Water Company, or its successors or assigns, may have the right, and they are hereby given the privilege, of making such reasonable rules and regulations as may be necessary for the purpose of carrying on the business of furnishing water under the provisions of this ordinance and for the purpose of making personal examination of the premises of an applicant for water, and of designating rates as herein established, and for the purpose of acquiring the right of access at all reasonable hours to all premises supplied with water for the purpose of designating the rates and ascertaining whether or not such customer is wasting the water within the meaning of this ordinance, all of which rules and regulations shall be such as are authorized by law, and shall be binding upon the persons or corporations connecting with the works of said company or taking water from the mains of said company.

"Sec. 25. Within thirty days after the passage of this ordinance the said Helena Consolidated Water Company shall file with the clerk of said city an acceptance in writing for itself and for its successors and assigns, of all the terms, conditions, and provisions of this ordinance, and a bond in the penal sum of $50,000, with two or more sufficient sureties to be approved by the mayor, conditioned that if the said company shall receive the sums of money herein agreed to be paid to it for the term of two years, upon its compliance with the conditions herein set forth, it will indemnify and save harmless the said city from any and all damages, costs, expenses, or liability therefor of whatsoever character, and to whomsoever the same may be due, or become created by, or in any manner arising from, Ordinance No. 93, approved November 22, 1886, or Ordinance No. 95, approved February 13, 1887. And this ordinance shall have no force or effect whatever except upon the filing of said acceptance and bond as herein provided, and also a relinquishment by George F. Woolston and the Helena Water Company of Salem, Ohio, from all claims against said city to the date of this contract arising from the ordinance in the section mentioned.

"Sec. 26. It is hereby declared and understood to be of the essence of the agreement and the acceptance hereof that the said Helena Consolidated Water Company shall, at all times during the term of such agreement, provide all the inhabitants of the city, whatever their number may be, with a full, ample, and sufficient supply of good, pure, and wholesome and clear water, and shall convey, distribute, and sell the same to them upon the terms and conditions herein provided and expressed."

To this bill of complaint the city of Helena interposed a demurrer, upon the grounds that the bill of complaint did not state facts sufficient to entitle the complainant to the relief demanded, or any relief, and that the bill was multifarious in the joinder of an alleged cause of action upon a contract with an alleged cause of action as a taxpayer. The city also filed a plea to the bill, alleging the commencement and pendency of actions in the state court, brought by the city prior to the filing of the bill of complaint, for the purpose of exercising, on the part of the city, the right of eminent domain in condemning certain water rights to supply the city of Helena and its inhabitants with water. The plea also alleged that prior to the filing of the bill of complaint the complainant and one Harry B. Palmer had commenced separate actions in the state court to restrain the city of Helena from auditing, allowing, or ordering paid any claim or demand against said city on account of any indebtedness incurred at any time when the indebtedness of the said city exceeded 3 per centum of the assessed value of the taxable property of said city, as ascertained by the last assessment for state and county taxes. Upon a hearing by the court, the demurrer and plea was overruled, and a temporary injunction issued as prayed for in the bill of complaint. The defendant in its answer admits the material allegations of the complaint, and, among others, the proceedings taken to procure a water system and supply of its own. To this answer a replication was filed, and thereupon the case was submitted to the court upon an agreed statement of facts.

From this statement it appears that "the indebtedness of the defendant is now, and has been for several years last past, in excess of 3 per cent. of the assessed value of all the taxable property in said city, as determined by the assessment for the state and county taxes during each and all of said years. That said indebtedness is now, and has been for several years last past, in excess of the sum of $486,000, and that the value of the taxable property during all of said times in said city, as determined by the assessment for the state and county taxes for each of said years, does not and has not exceeded the sum of $13,000,000. That no election has ever been held by the said defendant, the city of Helena, at which either the question of issuing bonds or contracting an indebtedness for a water plant, water system, and water supply to be owned and controlled by said city, has been submitted to the qualified electors thereof, and that no other election, upon which proceedings to allow a water plant and supply are based, has been had, except as hereinafter stated. That said defendant, the city of Helena, has never given the complainant notice that it desired to purchase its plant, franchise, or water supply, and that no effort has ever been made by the said defendant to agree with complainant upon the terms of such a purchase to acquire the plant and water supply of complainant, except as hereinafter stated in paragraph 8, and as follows: That during the months of September and October, 1899, pursuant to an order of the city council of said defendant city, defendant advertised for sealed proposals in the Helena Daily Independent, a daily newspaper of general circulation in said city and state, and in the American Contractor, a weekly publication of general circulation in the city of Chicago, state of Illinois, and throughout the United States, for sealed proposals for the 'construction and purchase of a water plant and supply,' in accordance with certain plans and specifications theretofore adopted by said city council, said proposals to be opened on November 6, 1899. That said plans and specifications expressly stated therein and contained the following: 'It is expressly understood that nothing herein contained shall prevent any company now operating a water plant in the city, or any other company or individual, from submitting a bid for the sale of any plant now constructed, or one proposed to be constructed, upon a place different from

that herein specified; but any such company or individual may submit any bid that it or he may desire, upon any other basis, and any and all such bids will be considered by the council in connection with any and all other bids received.' That in response to said advertisement a proposition was received from complainant herein, through Edgerly & Crocker, by Francis M. Edwards, their agent, offering to sell to defendant the water plant and system of complainant herein for the sum of $990,000. That at the time of receipt of said proposition by complainant, and the opening of bids by said city, to wit, November 6, 1899, the limit of indebtedness over and above the 3 per cent. limit fixed by the Constitution had not yet been extended, and that thereafter, to wit, at an election of the taxpayers affected thereby, in said city of Helena, held on the 4th day of December, 1899, pursuant to an ordinance in that behalf duly passed and approved, the question was submitted to said taxpayers affected thereby whether the limit of indebtedness should be extended 10 per cent. over and above said 3 per cent. limit, for the purpose of procuring a water supply and system to be owned and controlled by said defendant, and which should devote the revenues derived therefrom to the payment of the debt incurred therefor, the last assessed valuation of said city theretofore for state and county taxes being the sum of $10,740,000; but that the majority of the taxpayers affected thereby, voting at said election, voted 'No,' and against said proposed extension of 10 per cent., and as a result thereof the city council of said defendant was obliged to and did reject said bid and all others received. That thereafter an election was held on the 18th day of January, 1900, as alleged in the complaint, at which the majority of the taxpayers affected thereby of said city voted 'Yes,' and in favor of extending the limit of indebtedness of said city 5 per centum, or in amount $614,475.50 over and above the 3 per cent. limit, for the purpose of procuring a water supply and system to be owned and controlled by said city, and which should devote the revenue derived therefrom to the payment of the debt incurred therefor; and thereafter, on the 4th day of June, 1900, by Ordinance No. 477, duly passed by the city council of said defendant, and approved by the mayor on said date, said limit of indebtedness was, in accordance with said vote at said election, duly extended 5 per centum over and above the 3 per cent. limit, provided by section 6 of article 13 of the Constitution of the state of Montana, of the total assessed valuation of the taxable property of said city as ascertained by the last assessment theretofore for the state and county taxes, to wit, 5 per cent. of $12,287,510, namely, $614,475.50, over and above said limit of 3 per cent., for the purpose of procuring a water system and supply for said city, which shall own and control the same and devote the revenues derived therefrom to the payment of the debt incurred therefor; and that thereafter said defendant in that behalf, by the city council of said city duly authorized, commencing on the 7th day of June, 1900, and ending on the 20th day of June, 1900, advertised daily for sealed proposals in the said Helena Daily Independent for a 'water supply,' and also for a 'water supply and system,' to be owned and controlled by said city, in accordance with certain plans and specifications therein referred to and theretofore adopted by the city council of said city, said proposals to be opened on June 25, 1900, at the regular meeting of the city council on said date. That said plans and specifications in said advertisement referred to were as hereinbefore stated, but that no bid or proposal or response of any kind whatsoever to said advertisement was made by complainant herein, or by said defendant received from complainant in response thereto. That the city of Helena contemplates and intends to do all acts and things necessary to secure a water supply and system to be owned and controlled by the said city of Helena, and that it contemplates and intends to raise funds and revenue therefor in the manner provided by law, and to use the same for said purpose, and to furnish and supply the city of Helena and the inhabitants thereof with water from its said plant, and that it contemplates and intends to purchase and secure a sufficient quantity of water for said purpose, and that complainant does not obtain any of its water supply from either Beaver, McClellan, or Prickly Pear creeks. That Ordinances Nos. 467 and 483, mentioned in paragraph 27 of the complainant's bill of complaint, were duly passed and adopted and

approved, and that unless said defendant, the city of Helena, is enjoined and restrained from acquiring a water supply, plant, and system, it will proceed to acquire the same under said ordinances, or such others as are necessary for said purpose as hereinbefore stated, and will engage in furnishing the said defendant, the city of Helena, and inhabitants, with water suitable and proper for its use, and that to do so will depreciate the value of complainant's franchise and property as stated in paragraph 28 of the complaint; but that no injury of which complainant can complain will result therefrom if defendant city has the rights claimed by it. That the facts stated in paragraphs 29, 30, and 31 of the complainant's bill of complaint are true, except as to the legal inferences and deductions made therefrom, and the further fact that the acts complained of will not result in great and irreparable injury and damage, or any damage or injury, to said complainant, as a taxpayer or otherwise, unless it be found that the said acts are in violation of the rights of said complainant and an unwarranted attempt to exercise powers and rights in behalf of said defendant, the city of Helena. It is also agreed that at an election held at said city on the 29th day of July, 1895, it was decided that the limit of the city's indebtedness might be extended under the Constitution and laws passed in pursuance thereof by the legal voters of said city; that thereafter the city council of said city, by resolution duly passed, directed the city clerk to advertise for bids for a supply of water to be furnished, owned, and controlled by said city in accordance with plans and specifications theretofore adopted, and complied with the requirements of the law in such matters as hereinabove in paragraph 4 stated; that on the 14th day of December, A. D. 1895, the said Helena Consolidated Water Company, predecessor in interest of complainant, commenced its action in the district court of the First judicial district of the state of Montana, in and for the county of Lewis and Clarke, by which it sought to enjoin the defendant from advertising and receiving bids for said purpose, and to which complaint defendant, the city of Helena, duly filed its answer; that a restraining order was duly issued, and an appeal therefrom duly taken to the Supreme Court of the state, and by that court the said judgment so appealed from was reversed, and said cause remanded, with directions to said trial court to dissolve said injunction and dismiss said complaint; that thereupon a mandate duly issued, and said injunction was dissolved, and said complaint dismissed, and judgment entered accordingly, all of which said proceedings are still in full force and effect, and unreversed, and a copy of the pleadings, order for injunction, appeal, judgment, and opinion of the Supreme Court are hereto attached and admitted with all the force and effect to which the same may be and are entitled; that said defendant, city of Helena, has made no other efforts under the allegations of paragraph 24 of said complaint than as herein set forth, and that it proposes and intends to construct and establish a water plant and system, to be owned and possessed by it, prior to the expiration of the alleged contract and franchise of complainant, at such time as in its judgment and discretion it is feasible and proper so to do, and all actions and proceedings necessary therefor instituted and maintained, and that, unless enjoined and restrained from so doing, it will, both before and after the expiration of said alleged contract and franchise, furnish and supply the said city and the inhabitants thereof with water; that the revenue for said purpose will be created and raised by borrowing money or raising funds within the limit of indebtedness, as heretofore or hereafter to be extended in accordance with the requirements of the Constitution and provisions of the statutes of the state of Montana in that behalf, unless it shall be adjudged that it has no legal or equitable right to do so on account of the facts and admissions hereinbefore stated and made. And it is further agreed that said Ordinance No. 248 is in full force and effect, except in so far as it is or may be affected or modified by the ordinances or resolutions aforesaid."

Upon the pleadings and the agreed statement of the facts, the Circuit Court entered a decree adjudging and decreeing that the city of Helena, its officers and agents, be enjoined and restrained from acquiring a water plant, system, or supply, other than the plant, system, and supply of complainant, to be owned or controlled by it, for the purpose of supplying its inhabitants, or any thereof, with water, and from furnishing or supplying said inhabitants,

or any thereof, with water, until after the expiration of the franchise granted to the Helena Consolidated Water Company, its successors and assigns, by Ordinance No. 248 of the ordinances of said city, to wit, January 15, 1910. From the decree of the Circuit Court, awarding an injunction, the city of Helena appeals to this court.

Edward Horsky, City Atty., R. Lee Word, and Toole & Bach, for appellant.

Carpenter & Carpenter and Clayberg & Gunn, for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge, after the foregoing statement of facts, delivered the opinion of the court.

It is clear that Ordinance No. 248 does not grant an exclusive franchise to the water company to supply the inhabitants of the city of Helena with water during the term of the franchise, since the contrary is expressly provided in the first section of the ordinance granting the franchise and prescribing its terms. It is there provided that:

"Nothing herein contained shall be so construed as to give to the said Helena Consolidated Water Company, or its successors or assigns, the exclusive right of occupying the streets, avenues, alleys, and public grounds of said city with water mains and pipes, or the exclusive right of conveying, distributing, and selling the same throughout the city, or of furnishing the same to said city, except as hereinafter set forth."

The meaning of this proviso is made still more definite and certain by reference to the previous language of the section, making the grant of the franchise for laying and maintaining water mains and pipes for the purpose of distributing water throughout the city subject to the qualification that the water is to be sold to "all persons, bodies, or corporations within the city desiring to purchase the same," and making the general grant to have and exercise all the rights, privileges, and franchises necessary to the proper and successful furnishing of water subject to the further qualification that the water is to be furnished "to the inhabitants of said city, if required." In other words, the ordinance grants to the water company for the term of 20 years the license and franchise for laying and maintaining water mains and pipes for the purpose of distributing water throughout the city for sale to such purchasers as desire to obtain water from that company.

But the franchise is not exclusive. The city may grant another franchise to another company to occupy the streets of the city with water mains and pipes for the purpose of conveying, distributing, and selling water to the inhabitants of the city in competition with the grantee of the franchise. This much is conceded by the appellee. But the controversy turns upon the right of the city to engage in the business of supplying the inhabitants with water in competition with the appellee during the term of the franchise. It would seem that, if the city has the authority to grant a franchise to another corporation to construct and maintain a plant and system for supplying and selling water to its inhabitants, it would have the authority to construct and maintain a system for that purpose itself. The

appellee contends, however, that the city has by the terms of Ordinance No. 248 parted with that right during the continuance of the franchise, and, further, that the city is now proceeding without authority of law to procure a water plant and system of its own. These two questions appear to be the controlling questions in the case.

Whether the city of Helena is proceeding under authority of law to acquire a water plant and system to be owned and controlled by the city involves the consideration of a provision of the Constitution of the state, and statutes of the state passed to carry the provision of the Constitution into effect. The section of the Constitution referred to is section 6 of article 13, which provides as follows:

"No city, town, township or school district shall be allowed to become indebted in any manner or for any purpose to an amount, including existing indebtedness, in the aggregate exceeding three per centum of the value of the taxable property therein, to be ascertained by the last assessment for the state and county taxes previous to the incurring of such indebtedness, and all bonds or obligations in excess of such amount given by or on behalf of such city, town, township, or school district shall be void: provided, however, that the legislative assembly may extend the limit mentioned in this section, by authorizing municipal corporations to submit the question to a vote of the tax-payers affected thereby, when such increase is necessary to construct a sewerage system or to procure a supply of water for such municipality which shall own and control said water supply and devote the revenues derived therefrom to the payment of the debt."

It is stipulated in the agreed statement of facts that the indebtedness of the city of Helena is now, and has been for several years last past, in excess of 3 per cent. of the assessed value of all the taxable property in said city, as determined by the assessment for the state and county taxes during each and all of said years. Subdivision 64 of paragraph 4800 of the Political Code of Montana, relating to the legislative powers of cities and towns, as amended by the Act approved March 6, 1895, extends the limit of indebtedness mentioned in the Constitution (article 13, § 6), and provides that an additional indebtedness may be incurred by cities and towns incorporated under the laws of the state "when necessary to construct a sewerage system or procure a water supply for the said city or town, which shall own and control said water supply, and devote the revenues derived therefrom to the payment of the debt." The statute then proceeds to place a limit upon such additional indebtedness, providing that the limit of the indebtedness shall be submitted to a vote of the taxpayers affected thereby, and carried in the affirmative by a vote of the majority of the taxpayers who vote at such election. The statute further provides for the issue of bonds for such indebtedness, and, where a water supply is being furnished by private parties, the acquisition of the plant of such parties instead of the erection or construction of a new plant. The last provision of the statute was declared unconstitutional by the Supreme Court of the state in Helena Consolidated Water Company v. William L. Steele, 20 Mont. 1, 49 Pac. 382, 37 L. R. A. 412, thus disposing of that question; but the appellee objects to the remainder of the statute, on the grounds that it is a general law, whereas the Constitution, it is contended, contemplated a special act adapted to the circumstances of each case. We do not think this objection can be sustained. The tendency of

constitutional limitations upon legislative action is to require that no special law shall be enacted where a general law can be made applicable; and this provision we find in express terms in the Constitution of Montana, after an enumeration of cases where special laws are prohibited (section 26 of article 5).

But it is not necessary to pursue this question further. We think the whole question whether the city is proceeding under the authority of law is covered by the agreed statement of facts. It is there stipulated "that the city of Helena contemplates and intends to do all acts and things necessary to secure a water supply and system to be owned and controlled by the said city of Helena, and that it contemplates and intends to raise funds and revenue therefor in the manner provided by law." It is also stipulated "that no injury of which complainant can complain will result therefrom if defendant city has the rights claimed by it;" that the facts complained of "will not result in great and irreparable injury and damage, or any damage or injury, to said complainant, as a taxpayer or otherwise, unless it be found that the said acts are in violation of the rights of said complainant, and an unwarranted attempt to exercise powers and rights in behalf of said defendant, the city of Helena; that, unless enjoined and restrained from so doing, it [the city of Helena] will, both before and after the expiration of said alleged contract and franchise [Ordinance No. 248], furnish and supply the said city and the inhabitants thereof with water; * * * that the revenue for said purpose will be created and raised by borrowing money or raising funds within the limit of indebtedness, as heretofore or hereafter to be extended in accordance with the requirements of the Constitution and provisions of the statutes of the state of Montana in that behalf, unless it shall be adjudged that it has no legal or equitable right to do so on account of the facts and admissions hereinbefore stated and made." If these stipulations mean anything, they mean that the city is proceeding regularly under the Constitution and laws of the state for the purpose of securing a water supply and system to be owned and controlled by the city; and, as the stipulations appear to be in accordance with the law and the facts, they will be so construed, without further discussion.

The only remaining question necessary to be considered is whether, under Ordinance No. 248, the city has entered into an implied agreement or contract with the water company that it will not engage in the business of supplying water to the inhabitants of the city in competition with the water company during the term of the franchise. Referring again to the ordinance, we find in section 3 that the city made an express reservation that nothing contained in the ordinance should conclude the city "from the construction or maintenance of sewer works or other works or plants of a public nature." What are "works or plants of a public nature"? Section 6 of article 13 of the Constitution of the state, relating to public indebtedness, has authorized municipal corporations, as we have seen, "to procure a supply of water for such municipality, which shall own and control said water supply and devote the revenues derived therefrom to the payment of the debt." This authority clearly contemplates works

or plants of a public nature to carry out the constitutional power conferred upon the municipality; and the legislative assembly, in accordance with the authority of the Constitution, has not only provided, in subdivision 64 of section 4800 of the Political Code, for the creation of the indebtedness for the purpose of procuring a supply of water, but has also provided, in subdivision 79 of the same section, that the city or town council shall have power "to adopt, enter into, and carry out means for securing the supply of water for the use of the city or town or its inhabitants." This last provision is broad enough to authorize a municipal contract with a corporation or individual to supply the water required for the municipality; but it is also broad enough to authorize the city or town council to construct and maintain a plant of its own for that purpose, and, in our opinion, it was this power and authority that was reserved in section 3 of the ordinance.

We are further supported in this view of the ordinance by an examination of section 6, where it is provided that the water company shall furnish and provide a full, ample, and sufficient supply of good, pure, wholesome, and clear water for the use and wants of the inhabitants of the city, and to provide the city with water for fire, sewerage (maintenance and construction), and other purposes, and that such supply shall be full, ample, and sufficient for the present population of the city and for the future population of the city, as the same may be from time to time, "during the full term of five years." This section might properly be construed as a contract with the water company that the water company should have the exclusive right of supplying the city and its inhabitants with water during the first five years of the franchise. It might also be construed as an implied agreement that the city would not establish a plant of its own for the purpose of supplying water to its inhabitants or for its own purposes during that period. But this period of 5 years has long since expired, and the section now only serves to indicate that for the remaining 15 years of the franchise there was no exclusive franchise granted to the water company, and no implied agreement that during this last period it would not engage in the business of supplying water to the inhabitants of the city or for its own municipal purposes.

It appears that the court below followed the decision of the Circuit Court for the Western District of Missouri, in the case of Southwest Missouri Light Co. v. City of Joplin (C. C.) 101 Fed. 33, and 113 Fed. 817. It will be found, upon examination of that case, that the statute under which the municipal authorities acted was in the alternative; that is to say, the city council might, under the authority of the statute, establish gas or electric works, or light works of any kind, for the purpose of supplying the inhabitants of the city with light, or they might in their discretion grant the right to any person or corporation upon such terms as might be prescribed by ordinance, providing that such right should not extend for a longer period than 20 years. The city council, in the exercise of its discretion, adopted the latter alternative, and granted to certain persons the right to establish a light plant for the generation

of electricity, for the purpose of furnishing light, heat, motor power, and other purposes, for the period of 20 years. The Circuit Court very properly held that, the city council having adopted the alternative method of procuring light for the city and its inhabitants contemplated by the statute, it was an implied term of the contract, made by the acceptance of the ordinance, that the city could not itself enter into competition with the grantee in supplying light to consumers during the term of the grant by means of a light plant erected under the powers conferred by the statute. The law under which the city of Helena acted in this case prescribed no such alternative conditions, and we certainly ought not to assume that they are to be implied, unless the implication is so plain as to be beyond all doubt; and this is not the case with respect to either the law of the state or the ordinance of the city.

Public grants are to be so strictly construed as to operate as a surrender by them of the sovereignty no further than is expressly declared by the language employed for the purpose of their creation. The grantee takes nothing in that respect by inference. Such is deemed the legal intent of the state in imparting to its citizens or corporations powers and privileges of public character. Syracuse Water Co. v. City of Syracuse, 116 N. Y. 167, 178, 22 N. E. 381, 5 L. R. A. 546. The general doctrine is that whenever privileges are granted to a corporation, and the grant comes under revision in the courts, such privileges are to be strictly construed against the corporation and in favor of the public, and that nothing passes but what is granted in clear and explicit terms. Charles River Bridge v. Warren Bridge, 11 Pet. 420, 9 L. Ed. 773, 938; Rice v. Railroad Company, 1 Black, 358, 380, 17 L. Ed. 147.

In Bienville Water Supply Co. v. Mobile (C. C.) 95 Fed. 539; Id., 175 U. S. 109, 20 Sup. St. 40, 44 L. Ed. 92, the city of Mobile was authorized and empowered by its charter and an act of the Legislature to build or otherwise acquire waterworks of its own, to supply water to itself and its inhabitants for the extinguishment of fires and for sanitary and domestic purposes. The city, instead of building or acquiring waterworks of its own, entered into a contract with the Bienville Water Supply Company, by which it was agreed that the water company would furnish for the use of the city 260 fire hydrants and water for fire service of a certain number of streams and pressure, and it was further agreed that the city would have the unrestricted use of such hydrants for such fire purposes and the free use of water for all municipal buildings. The water company agreed not to charge, during the continuance of the contract, for domestic use, a greater or higher rate for water than that named and specified in the contract. The city, in consideration of the stipulations contained in the agreement on the part of the water company, agreed to pay the water company for the use of the hydrants at the rate of $50 per annum for each hydrant during the continuance of the contract. It was agreed that the contract should be for 6 years. It was afterwards extended for a period of 12 years. Before the expiration of this contract the city proceeded to erect waterworks of its own for the purpose of supplying water to its inhab-

itants and for its own use. The water company filed a bill in equity in the United States Circuit Court against the city to enjoin it from making or carrying out any other contract for supplying water to its inhabitants, or from the construction of a system of waterworks for that purpose, during the continuance of the contract with the water company, and from building or acquiring a system of waterworks to bring water into the city during such contract. To this bill the city demurred. In support of the bill the water company contended that the city had no legal right to impair the value of its plant, or to destroy or diminish its income therefrom, which would be the effect of the city's action in building waterworks and furnishing water to its inhabitants; and it was averred that the city was insolvent, and that the only way complainant could protect itself was through the interposition of a court of equity. It was not asserted by the water company that it had been granted an exclusive franchise to furnish water to the city and its inhabitants; but it was contended that under the contract the city had no right to furnish water to other persons, or to build or acquire a system of waterworks to supply water to itself and its inhabitants, and that to do this was a violation of the contract. The bill was dismissed by the Circuit Court. In the Supreme Court the decree of the Circuit Court was affirmed, the Supreme Court holding that no acts were averred showing that the city was violating or intended to violate its contract with the water company.

In the case of Skaneateles Water Co. v. Skaneateles, 184 U. S. 354, 22 Sup. Ct. 400, 46 L. Ed. 585, the franchise granted to the water company was very much of the same character as the franchise involved in this case. It was there said:

"There is no implied contract in an ordinary grant of a franchise, such as this, that the grantor will never do any act by which the value of the franchise granted may in the future be reduced. Such a contract would be altogether too far-reaching and important in its possible consequences in the way of limitation of the powers of a municipality, even in matters not immediately connected with water, to be left to implication. We think none such arises from the facts detailed."

The principle of these last cases, we think, disposes of the question whether the city of Helena has, under Ordinance No. 248, parted with the right to construct and maintain a plant and system for supplying and selling water to its inhabitants, and disposes of the question in favor of the city.

The decree of the Circuit Court is therefore reversed, with instructions to dismiss the bill of complaint.