FARMERS' LOAN & TRUST CO. v. MAYOR, ETC., OF MERIDIAN et al.

(Circuit Court, S. D. Mississippi, E. D.    April 28, 1905.)

No. 38.

WATERS—PUBLIC SUPPLY—GRANT OF FRANCHISE TO WATER COMPANY—CONSTRUCTION OF CONTRACT.

. A city ordinance granting a franchise to construct and maintain waterworks therein expressly stated that when accepted it should constitute a contract, and should be the measure of the rights and liabilities of the parties. It obligated the grantee to construct waterworks according to plans furnished by the city, and to maintain the same for the period of 25 years with a capacity sufficient to supply all the needs of the city and its inhabitants. It bound the city to take and pay for water during the full term, but gave it the right at its election to purchase the works at either of certain stated times on specified terms and conditions. *Held*, that such ordinance, when accepted and acted on by the grantee by the construction of the works to the acceptance of the city, constituted a contract which precluded the city from constructing competing works while such contract was in force.

In Equity.    On demurrer to bill and motion to dissolve injunction.

Brown & Spurlock, for complainant.

Miller & Baskin, S. A. Witherspoon, and Ethridge & McBeath, for defendants.

NILES, District Judge.    This was a bill in equity, filed by the trustee holding title to the property and franchises of the Meridian Waterworks Company, to enjoin the mayor and aldermen of the city of Meridian from erecting a competing system of waterworks during the term of the contract under which the plant now in operation was constructed. The demurrer to the original bill was overruled, and answer has been filed. Under leave granted to the complainant, it filed a supplemental bill amplifying its allegations of title to the waterworks and franchises. The case is now submitted on motion to dissolve the injunction and on demurrer to the supplemental bill. It will be sufficient for present purposes to determine these two leading questions: Did the defendant city agree not to construct waterworks to supply itself and inhabitants with water during the continuance of the contract set forth in the bill? Is the decree of the state court annulling this contract binding on the complainant without its being made a party to the suit in which the decree was rendered? All of the questions submitted may be reduced to these two.

The question as to when a city may be enjoined from constructing and operating waterworks to supply water for its public uses and the consumption of its citizens has been the subject of consideration in several recent cases decided by the Supreme Court of the United States, and the controlling principles appear to be clearly established as the result of these cases. One rule is that, where the proposed action of the city violates no contract existing between it and the complaining company, the injunction will not be granted;

and that a contract not to compete will not be implied from the mere grant of a franchise or license to build. This was the holding in Bienville Water Supply Co. v. Mobile, 175 U. S. 109, 20 Sup. Ct. 40, 44 L. Ed. 92, and Id., 186 U. S. 212, 22 Sup. Ct. 820, 46 L. Ed. 1132. In that case the water company received its right to construct its system and to use the streets of Mobile for that purpose directly from the Legislature of the state. After its erection it did make a contract with the city to supply water for its public uses. This contract was about to expire at the time the suit was brought, and it was not the contract which the bill sought to protect. The bill was therefore dismissed. The water company then filed an amended bill, claiming that its charter derived from the state constituted a contract that was violated by the subsequent act of the Legislature empowering the city to build a plant of its own. But the Supreme Court on the last appeal held that this act was constitutional, and did not violate any valid provision of the water company's charter. There being no contract, the proposed action of the city was not a violation of the complainant's rights. Such was also the effect of the decision in Skaneateles Water Co. v. Skaneateles, 184 U. S. 354, 22 Sup. Ct. 400, 46 L. Ed. 585. There the water company, under a statute of the state, applied to the village for authority to become a corporation, with the right to construct and maintain waterworks for furnishing water to the village and its inhabitants. The certificate issued by the village in this application became the charter of the company. All that the company secured from the village was the right to be a corporation, and to use the streets for its waterworks, a right which it was conceded any other company might acquire in the same way. After the works were completed, the village contracted for its supply of water for a period of five years, being prohibited by the laws of the state from contracting for a longer period. This contract had expired before the bill was filed. The injunction was denied on the holding "that, when the contract for five years had expired, there was nothing in the state Legislature upon which to base an implied contract."

In Joplin v. Light Company, 191 U. S. 150, 24 Sup. Ct. 43, 48 L. Ed. 127, there was no contract existing between the complainant and the city. Under a statute authorizing the city to erect and operate lightworks to light the streets and supply the inhabitants with lights for their own use, or to grant the right to any other person on such terms as it chose to prescribe by ordinance, the city granted a franchise to the complainant company. It was not claimed that the license was in itself a contract, or that it was not such a grant as might not be made to other light companies. It was only claimed that the city, by granting this franchise, had impliedly agreed not to construct works of its own during the term of the license.

Neither of the cases was founded on an actual contract, but each of them depended on the right of implying a contract from the mere grant of a franchise or license to construct and maintain. The

answer to this claim, as stated in the Skaneateles Case, and repeated in the Joplin Case, was as follows:

"There is no implied contract in an ordinary grant of a franchise, such as this, that the grantor will never do any act by which the value of the franchise granted may in the future be reduced. Such a contract would be altogether too far-reaching and important in its possible consequences in the way of limitation of the powers of a municipality, even in matters not immediately connected with the water, to be left to implication. We think none such arises from the facts detailed."

The latest case that I have been able to find in this line of authorities is Helena Water Works Co. v. Helena, 195 U. S. 383, 25 Sup. Ct. 40, 49 L. Ed. 245. In this case it appeared that the city had granted to the water company (section 1 of ordinance) for a term of 20 years the license and franchise of laying and maintaining water mains through the streets for the purpose of selling water to all persons or companies "desiring to purchase the same." By another provision (section 6) the grantee was obligated "to furnish and provide a full, ample, and sufficient supply of good, pure, wholesome, and clear water for the use and wants of the inhabitants of said city, and to provide said city with water for fires, sewerage (maintenance and construction), and for other purposes; and such supply shall be full, ample, and sufficient for the present population of said city, as the same may be from time to time during the full term of five years." Section 21 made appropriations for the payments of hydrant rentals and other public uses during the five years. It was held that section 1 was not a contract, but the grant of a license to lay pipes to sell water to whoever might desire to purchase, and that the only contract was contained in section 6. The language of the court on this point was as follows:

"Properly construed, we think this ordinance shows an agreement upon the part of the company to furnish water to the inhabitants of the city at not exceeding certain maximum rates, and to the city itself upon terms to be agreed upon, made definite, as far as the city was concerned, for the term of five years. As thus interpreted, we do not find anything in this contract that prevents the city, certainly after the expiration of five years, from constructing its own plant. It has not specifically bound itself not so to do, and, as has been frequently held in this court, nothing is to be taken against the public by implication."

This case was heard by the Supreme Court on appeal from the Circuit Court of Appeals of the Ninth Circuit, and the judgment of the latter court was affirmed. That court had said of section 6 of the ordinance:

"This section might properly be construed as a contract with the water company that the water company should have the exclusive right of supplying the city and its inhabitants with water during the first five years of its franchise. It might also be construed as an implied agreement that the city would not establish a plant of its own for the purpose of supplying water to its inhabitants or for its own purposes during that period. But this period of five years has long since expired, and the section now only serves to indicate that for the remaining fifteen years of the franchise there was no exclusive franchise granted to the water company, and no implied agreement that during this last period it would not engage in the business of supplying water to the inhabitants of the city, or for its own municipal purposes." City of Helena v. Helena Water Works Co., 122 Fed. 13, 58 C. C. A. 381.

From these authorities it would seem that a city may bind itself not to compete with one to whom it has granted a license or franchise only by express stipulation that it will not build and maintain a plant during the term of the license. The exclusive nature of such a grant will not be implied.

In the simple grant of an ordinary franchise a city does not act in the exercise of its contractual, but of its legislative, powers, which cannot be limited by implication. Its freedom of action in this respect is only subject to legislative control. If the law has imposed no restrictions, the courts will not imply them. But this principle is equally as well established: That, where a city has entered into a contract, it will be enjoined from impairing by legislative authority either the express or implied conditions of the contract. This rule is recognized in all the cases cited, and is expressly declared in those now to be considered.

In Walla Walla City v. Walla Walla Water Company, 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341, the case was this: The city, under legislative authority, had by contract granted to the water company the right to lay its pipes in the streets for 25 years, reserving the right to maintain five hydrants and flush sewers during the term free of charge. The city stipulated that during the existence of the contract it would not erect, maintain, or become interested in any other works. It was held that during the life of that contract the city could not build and operate works of its own. Objection was made that that provision of the contract wherein the city agreed not to build a plant to supply itself and citizens with water was void; but the provision was thus construed:

"Taking sections 7 and 8 together, they amount simply to this: that, if the city should desire to establish waterworks of its own, it should do so by condemning the property of the company, and making such changes in its plant, or such additions thereto, as it might deem desirable for the better supply of its inhabitants; but that it would not enter into a direct competition with the company during the life of the contract. As such competition would be almost necessarily ruinous to the company, it was little more than an agreement that the city would carry out the contract in good faith. An agreement of this kind was a natural incident to the main purpose of the contract, to the power given to the city by its charter to provide a sufficient supply of water, and to grant the right to use the streets of the city for the purpose of laying water pipes to any person or association of persons for a time not exceeding twenty-five years. In establishing a system of waterworks the company would necessarily incur a large expense in the construction of the power house and the laying of its pipes through the streets, and, as the life of the contract was limited to twenty-five years, it would naturally desire to protect itself from competition as far as possible, and would have a right to expect at least the city would not itself enter into such competition. It is not to be supposed that the company would have entered into this large undertaking in view of the possibility that, in one of the sudden changes of public opinion, to which all of the municipalities are more or less subject, the city might resolve to enter the field itself—a field. in which it would have become master—and practically extinguish the rights it had already granted to the company. We think a disclaimer of this kind was within the fair intendment of the contract, and that a stipulation to that effect was such a one as the city might lawfully make as an incident of the principal undertaking."

In Vicksburg Water Works Co. v. Vicksburg, 185 U. S. 65, 22 Sup. Ct. 585, 46 L. Ed. 808, there was an express contract between

the city and the water company in force at the time the suit was brought; and, while it in terms contracted to grant exclusive rights, the jurisdiction of the court was not sustained on this ground, as will appear from the following language of the Supreme Court (pages 80, 81, 185 U. S., page 591, 22 Sup. Ct. 591, 46 L. Ed. 808):

"It cannot be seriously contended that under the act of March 18, 1886, authorizing the city to provide for erection and maintenance of a system of waterworks, and to contract with a party or parties to build and operate waterworks, and under the ordinance of the city November 18, 1896, providing for a supply of water to the city and its inhabitants by contracting with Samuel R. Bullock & Company, their associates, successors, and assigns, and the acceptance of said ordinance by Samuel R. Bullock & Company, no contract was entered into. The subject-matter of the contract was within the powers of the city to make. The terms were explicitly set forth in the ordinance; the works erected were approved by the city; and the respective obligations created by the contract were duly complied with, without question or complaint, for a period of fourteen years."

Coming now to the contract involved in the suit at bar, it will be noticed that by an amendment to the charter of the defendant city approved March 16, 1886, its mayor and board of aldermen and councilmen were given legislative authority "to make a contract with any person or company for the supply of a sufficient amount of pure and wholesome water to the people of said city," and to "bind said city by contract to pay an agreed sum every year to such company or person for a supply of such water." But before entering into such contract the act provided that the mayor and board should employ an engineer, skilled in the planning and construction of waterworks, as might be needed, and the cost thereof; his report to be made under oath, and filed in the office of the mayor, subject to the inspection of all persons, for 10 days prior to the making of any contract. The contract was to be drawn so as to secure the city in the performance thereof, and this performance was to be further assured by provisions for such penalties and forfeitures as might be deemed expedient, as well as the requirement of ample security to be given by the person undertaking to build the works.

This act not only contemplated that the city should enter into a contract to secure the building of waterworks, but required that said works should be built according to the city's own plans. These provisions of the enabling act bring this case within the principle declared in Vicksburg Water Works Company v. Vicksburg, before referred to. The plans required by the charter of defendant city were made by an engineer selected by it, and the contract in suit was then executed in the form of an ordinance passed by the city and accepted by W. S. Kuhn, whose bid, among others proposed, was adopted by the city authorities. This contract was subsequently assigned to the Meridian Water Works Company, and was by it conveyed, together with all its other property, to the Farmers' Loan & Trust Company, the complainant herein, to secure a loan of the funds necessary to build the works. The substance of this contract, so far as necessary to be stated, was as follows: There was granted to W. S. Kuhn, his associates and assigns, sub-

ject to the right of the city to purchase, and to certain conditions of forfeiture stated, the use of the streets, alleys, and other public grounds of the city to construct, own, and maintain waterworks for a period of 25 years, unless such right should be sooner terminated by purchase or forfeiture, as therein provided. The original pumping capacity and pipe lines was stated in the contract, which also empowered the city to order such future extensions as it desired. The system was to be at all times sufficient to supply all the demands of the city and its people. If there was a failure in this respect at any time during the life of the contract, and the grantee and his assigns should not make due and reasonable efforts to replenish and increase the same, the contract should be revoked. In section 6 the grantee was made to "agree to use and constantly operate the said works during the full term and continuance of this franchise and license." And the city itself undertook (sections 13–21) by its ordinances to protect the grantee in the enjoyment of its franchise against the waste of water by consumers, the pollution of its water supply, "and also to carry into effect the provisions of this ordinance and the contract thereunder entered into," and to repeal all ordinances conflicting with the one then adopted. Sections 15 and 19 are as follows:

"Sec. 15. In consideration of the benefits which will be derived by the said city and its inhabitants, from the construction and operation of the said waterworks, and in further consideration of the water supply hereby secured for public use and as an inducement for the said grantee, his associates, successors or assigns to enter upon the construction of the said waterworks, the franchise and the license hereby granted to and invested in him shall remain in full force and effect for a term of twenty-five (25) years subject, however, to a prior termination by the rights of purchase made as in this ordinance provided; and for the same consideration, and as the same inducement, the city of Meridian rents of the said grantee, his associates, successors or assigns, for the uses hereinafter mentioned, the hydrants hereinbefore described, for and during the term of twenty-five (25) years from the completion of said works, unless said term shall be sooner terminated as provided herein."

"Sec. 19. This ordinance is passed under the express condition and reservation that the city of Meridian reserves to itself the right to acquire of the said grantee, his associates, successors or assigns, the said waterworks and all the land and machinery, pipes, mains, hydrants, property, privilege rights, leases and appurtenances thereto belonging; and the said grantee, his associates, successors, or assigns, in accepting this ordinance, expressly covenant and agree, that they will sell to the city of Meridian, the said waterworks and all the land and machinery, pipes, mains, hydrants, property privileges, rights and leases and appurtenances, thereto belonging, at the expiration of ten (10) years, and at any interval of five years thereafter at an appraised value of said works to be determined as follows."

It was expressly stipulated that the ordinance, when accepted, should be "a contract between the city and said grantee, and should be the measure of rights and liabilities of the city and said grantee, his associates, successors and assigns."

In 2 Parsons on Contracts (8th Ed.) 515, we find the following:

"The law, as we have already had occasion to say in reference to various topics, frequently supplies by its implications the want of express agreements between the parties. But it never overcomes by its implications the express provisions of parties. If these are illegal, the law avoids them. If they are legal, it yields to them, and does not put in their stead what it would have

put by implication if the parties had been silent. The general ground of a legal implication is that the parties to the contract would have expressed that which the law implies, had they thought of it, or had they not supposed it was unnecessary to speak of it because the law provided for it. But where the parties do themselves make express provision, the reason of the implication fails."

It is not necessary in this case to imply a contract binding upon the city or obligating it not to construct competing works. It is only necessary to enforce plain, expressed provisions of this contract, and the necessary legal implications therefrom. The grantee in the contract in question being expressly obligated to construct waterworks according to plans furnished by the defendant city, and to maintain the same for a period of 25 years, so as to supply all the needs of the city and its inhabitants, the implications cannot be escaped that the city thus onerated itself with the corresponding obligation to do no act on its part that would prevent the performance of that duty which it had imposed upon the other part. If the city has the right now by competition to destroy the waterworks built under this contract, it would have had the same right the day after the same were completed. Such action then would have been so contrary to simple justice and the contractual rights of the parties that no such action would have been contemplated for a moment. It is now established as a matter of law that the construction of a municipal system of waterworks destroys the value of any private plant then in operation. Walla Walla City v. Walla Walla Water Co., supra:

It is strongly insisted in behalf of defendant that this case is controlled by the decision of the Supreme Court in the case of the City of Dawson v. Columbia Avenue Saving Fund, etc., Co. (not yet officially reported) 25 Sup. Ct. 420, 49 L. Ed. 713. But the Supreme Court of the United States refused to take jurisdiction of that case as one arising under the Constitution of the United States, for the reason that the action of the city which it was sought to enjoin was not authorized, but, as alleged, opposed to the laws of the state. In the case at bar it is alleged in the bill and admitted in the answer that the city was proposing to build waterworks under an act of the Legislature directly conferring authority upon it to do so. Concerning the question as to whether the decree of the state court annulling the contract is conclusive against the complainant in this suit, it is only necessary to state the following facts: Under the laws of Mississippi the Meridian Water Works Company was authorized to pledge its property and franchises incident thereto to secure loans. The contract already discussed shows upon its face that the parties thereto contemplated that it would be necessary for the grantees to borrow money to construct the works provided for. On November 1, 1886, the Meridian Waterworks Company did execute a mortgage wherein it conveyed to the complainant in this suit its property and franchises to secure a loan of $150,000, evidenced by negotiable bonds, for the purpose of constructing the plant originally. In November, 1892, it executed another mortgage conveying the same property to the same trustee, to secure an ad-

ditional loan of $100,000 to pay for extensions required by defendant city. On November 1, 1899, it executed another mortgage for the purpose of securing an additional loan of $100,000 and continuing previous loans as a first mortgage upon the property. For reasons more fully stated in the case of the Farmers' Loan & Trust Company v. The Meridian Water Works Co. et al. (No. 42 in this court) 139 Fed. 661, the last mortgage was no more than a continuance of the first, and did not destroy the effect of the fact that at the time the decree in the state court was rendered the title to the property of the waterworks company and the contract in suit was in the complainant for the benefit of the bondholders who had furnished the money for the purpose of building and extending this system of waterworks. On the authority of the Louisville Trust Company v. Cincinnati, 76 Fed. 296, 22 C. C. A. 234, and Columbia Ave. Savings Fund, etc., Co. v. City of Dawson (C. C.) 130 Fed. 152, it must be held that the complainant, who was not a party to the proceedings in the state court, is not bound by the decree therein entered.

I am therefore of the opinion that the demurrer to the supplemental bill is not well taken, and an order will be entered overruling the same. I am further of the opinion that the motion to dissolve the injunction heretofore granted is not well founded, and is disallowed.