HENRY C. DURAND *et al.*

*v.*

GEORGE C. LORD.

*Filed at Ottawa January 25, 1886.*

1. LIS PENDENS—*diligence required in the prosecution of the suit—limitations to the doctrine—and effect of fraud and delay, in its application.* The doctrine of *lis pendens* is founded upon public convenience and necessity, but has its limitations, which are essential to the proper administration of justice. When sought to be enforced against a *bona fide* purchaser without notice in fact, it is regarded as a hard rule of law, and will not be enforced unless the party invoking it brings himself clearly within it.

2. The principal limitation upon the doctrine of *lis pendens* is, that there must be a continuous prosecution of the suit,—that is, the suit must be kept upon the docket, and there should be no such delays in taking the ordinary steps in bringing it to a final hearing as to lead the opposite party or the community at large to suppose the suit has been abandoned. More especially one will not be heard to invoke the doctrine who has deliberately made false representations to his adversary for the purpose of throwing him off his guard, and surreptitiously obtaining a decree against him, when there is reason to suppose his adversary might, and otherwise would, have successfully resisted the decree.

3. What is an unreasonable delay in the prosecution of a suit, under some circumstances, so as to defeat or destroy a *lis pendens,* may not be under others. So where there was a delay of four years between the date of a reversal of a decree and the filing of the mandate in the court below, and the complainant's counsel gave the defendants to understand that the suit, so far as it sought to affect the title to certain real estate, was abandoned, but took a decree that was not expected, and which might have been successfully resisted but for such assurance, it was *held,* inequitable to apply the doctrine of *lis pendens.*

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. WILLIAM H. BARNUM, Judge, presiding.

Mr. H. O. McDAID, and Mr. MARVIN BLANCHARD, for the plaintiffs in error:

The defendant in error acquired his claim to the property in question *pendente lite,* and the decree granting him relief was erroneous. The decree of 1875 is conclusive on Garrison and all persons claiming under him. *Jackson* v. *Warren,* 32 Ill. 331; *Dickson* v. *Todd,* 43 id. 504; *Gould* v. *Hendrickson,* 96 id. 601.

The defendant in error and those through whom he claims were bound to know, as a matter of law, that the cause involving the title to this lot had been pending on an appeal, and had been reversed and remanded. *Reaugh* v. *McConnel,* 36 Ill. 373; *Haywood* v. *Collins,* 60 id. 340; *Murray* v. *Whittaker,* 17 id. 230.

The cause relating to this lot was continuously pending from 1861 until the final decree in 1875, and defendant in error could not limit or vary the complainant's rights by purchase in 1871. *Hopkins* v. *McLaren,* 4 Cow. 678; *Tilton* v. *Cofield,* 93 U. S. 163.

*Lis pendens* defined: Bouvier's Law Dic. 76; Rapalje and Lawrence's Law Dic. 765; Beames' Orders in Chancery, 7; 4 Cow. 678; 1 Vern. Ch. 318; *Gould* v. *Hendrickson,* 96 Ill. 599; *Lewis* v. *Mew,* 1 Strobh. Eq. 180; *Green* v. *White,* 7 Blackf. 242; *Feigley* v. *Feigley,* 7 Md. 563; Story's Eq. Pl. sec. 351.

On what principles it rests: Coke on Littleton, 344b; *Tilton* v. *Cofield,* 93 U. S. 168; 1 Vern. 318; *Belamy* v. *Sabine,* 1 DeG. & J. 566; *Bishop of Winchester* v. *Paine,* 11 Ves. 194; *French* v. *Loyal Co.* 5 Leigh, 617; *Newman* v. *Chapman,* 2 Rand, 102.

Decisions of this and other courts holding that a final decree is conclusive against a purchaser *lis pendens: Gilman*

v. *Hamilton,* 16 Ill. 225; *Debell* v. *Foxworthy's Heirs,* 9 B. Mon. 220; *Madison's Heirs* v. *Hopkins,* 12 id. 600; *Bradley* v. *Luce,* 99 Ill. 245; *Loomis* v. *Riley,* 24 id. 307; *Hurd* v. *Case,* 32 id. 48; *Jackson* v. *Warren,* 32 id. 340; *Dixon* v. *Todd,* 43 id. 507; *Davis* v. *Life Ins. Co.* 84 id. 510; *Walker* v. *Douglas,* 89 id. 427; *Gould* v. *Hendrickson,* 96 id. 600.

Close and continuous prosecution defined: *Ferrier* v. *Buzick,* 6 Iowa, 258; Beames' Orders in Chancery, 7; Barton's Suit in Equity, 195; *Hull* v. *Deatly's Admr.* 7 Bush, 690.

The necessary delay of a chancery case does not defeat the application of *lis pendens.* *Murray* v. *Ballou,* 1 Johns. Ch. 576; *Watson* v. *Wilson,* 2 Dana, 413; *Gossom* v. *Donaldson,* 18 B. Mon 237.

Adjudged cases relating to diligent prosecution: *Herrington* v. *McCollum,* 73 Ill. 483; *Watson* v. *Wilson,* 2 Dana, 411; *Ludlow* v. *Kidd,* 3 Ohio, 541; *Herrington* v. *Herrington,* 27 Mo. 562; *Clarkson* v. *Morgan,* 6 B. Mon. 443; *Trimble* v. *Boothby,* 14 Ohio, 109; *Gibler* v. *Trimble,* 14 id. 323.

The decree of August 4, 1875, is conclusive against a collateral attack, and is a perpetual bar against the claim of defendant in error. *Wells* v. *Mason,* 4 Scam. 000; *Stookey* v. *Hughes,* 18 Ill. 56; *Matthias* v. *Cook,* 31 id. 87; *Magee* v. *Hutchinson,* 2 Gilm. 270; *Barnett* v. *Wolf,* 70 id. 81; *Harris* v. *Lester,* 80 id. 314; *Kelly* v. *Donlin,* 70 id. 386.

Mr. W. C. GOUDY, and Messrs. PADDOCK & ALDIS, for the defendant in error:

The circuit court had ample jurisdiction to render the decree removing the cloud from the complainant's title. *Brooks* v. *Kearns,* 86 Ill. 550; *Hardin* v. *Jones,* id. 313; *Hutchinson* v. *Howe,* 100 id. 11; *Gage* v. *Abbott,* 99 id. 366; *Morris* v. *Hoyle,* 37 id. 153; *Campbell* v. *McCahan,* 41 id. 45; *Haywood* v. *Collins,* 60 id. 328; *Mulvey* v. *Carpenter,* 78 id. 580.

The decree of August 4, 1875, and the subsequent sale and deed to Durand, were all void as to Garrison for want of juris-

diction over him, such jurisdiction having been terminated by the dismissal order of April 8, 1873, and the cause, so far as Garrison was concerned, never having thereafter been re-instated. *Barber* v. *Kerzinger,* 23 Ill. 346.

The suit once dismissed could not thereafter be revived so as to affect Lord, without making him also a defendant. *Herrington* v. *McCollum,* 73 Ill. 483 ; Freeman on Judgments, sec. 203.

If a suit in chancery is dismissed for any cause than on the merits, although no bar to a new suit, it can not affect a purchaser during the pendency of the first suit. *Herrington* v. *McCollum, supra; Newman* v. *Chapman,* 2 Rand, 93 ; *Watson* v. *Wilson,* 2 Dana, 408 ; *Herrington* v. *Herrington,* 27 Mo. 560.

Still less could a purchaser after the dismissal and before the revival of the suit in such cases be affected. *Price* v. *White,* 1 Bailey's Eq. 234 ; *Blake* v. *Hayward,* id. 208 ; *Turner* v. *Crebill,* 1 Ohio, 373.

To affect one as a purchaser *pendente lite,* it is necessary that the holder of the legal title should have been impleaded before the purchase which is to be set aside. The doctrine of constructive notice by *lis pendens* applies only to those who acquire an interest from a defendant. *Miller* v. *Sherry,* 2 Wall. 250 ; *Scarlett* v. *Gorham,* 28 Ill. 319.

That notice of re-docketing is essential to give the court jurisdiction, see *Mulvey* v. *Carpenter,* 78 Ill. 581 ; *Harris* v. *Lester,* 80 id. 308 ; *Hayward* v. *Collins,* 60 id. 329 ; *Tibbs* v. *Allen,* 29 id. 535 ; *Welsh* v. *Lewis,* 31 id. 446 ; *Mattoon* v. *Hinckley,* 33 id. 209.

But the facts show that the plaintiffs in error abandoned any claim to subject this lot to the payment of their judgment. *Bacon* v. *Lawrence,* 26 Ill. 54 ; *Peoria County* v. *Gordon,* 82 id. 438 ; *Curtis* v. *Root,* 28 id. 367.

The complainants are estopped, because under all the circumstances they ought to have acted differently, and with

greater diligence, if they had not intended to waive their alleged rights. *Noble* v. *Chrisman,* 88 Ill. 187.

Mr. CHIEF JUSTICE MULKEY delivered the opinion of the Court:

On the 20th of December, 1877, the defendant in error, George C. Lord, filed in the circuit court of Cook county a bill in equity against the plaintiffs in error, Henry Durand and others, to quiet title to the west half of the east half of lot 7, block 117, school section addition to Chicago, known in the record as the "Adams street property."

The facts, as alleged in the bill and established by the proofs, are substantially as follows: William O. Heacock, being the owner in fee of the property, by warranty deed bearing date April 5, 1858, for the expressed consideration of $3000, conveyed the same to Andrew Garrison, the wife of Heacock joining in the deed, and it was recorded on the 21st of the same month. By another deed, bearing date April 10, 1858, Heacock conveyed to Garrison the remainder of the real estate, in trust, for the payment of his debts, and also, at the same time, executed to him a general assignment for the benefit of his creditors. The present plaintiffs in error, on the 6th of June, 1860, obtained a judgment against Heacock, in the Superior Court of Chicago, for $1300 and costs, and on the 24th of October following, they filed in the same court a creditors' bill against Heacock, Garrison and others, to set aside the assignment and two deeds above mentioned, and to subject the property so conveyed and assigned to the payment of complainants' judgment. It was charged in the bill that said conveyance by Heacock and wife, of the 5th of April, 1858, was without consideration, and was made to hinder and delay his creditors in the collection of their just debts, and that as to them it was null and void. The bill called for answers under oath, and prayed that the above mentioned deeds and assignment be set aside as fraudulent

and void, etc. The defendants Heacock and Garrison answered, jointly, under oath, claiming that the deed of April 5, 1858, was in consideration of $3000, paid by Garrison's assuming the payment of a trust deed to Mr. Mulford, which was a lien thereon, and cancelling other indebtedness. It was positively averred, in their answer, that said deed was made in good faith, and without any intent to delay, hinder or defraud creditors. On the 10th April, 1861, the replication to this answer was withdrawn, and the cause was set down for a hearing on bill and answer. On January 7, 1863, a decree was entered in said cause setting aside the assignment, and deed of April 10, 1858, but not disturbing the deed of the 5th of April, conveying the Adams street property. On May 9, 1867, that decree, on the appeal of Heacock and Garrison, was reversed by this court, and the cause remanded to the Superior Court. There was nothing, however, in the judgment of reversal, affecting the deed to the Adams street property. See *Heacock et al.* v. *Durand et al.* 42 Ill. 230.

After the assignment, and deed of April 10, 1858, had been held fraudulent and void by this court, Garrison, acquiescing in the decision, re-conveyed to Heacock all the property then in his hands as assignee and as grantee under said last mentioned deed. On May 12, 1871, the mandate of this court was filed in the Superior Court, and the cause re-docketed. On June 17, 1871, the venue in the cause was changed to the circuit court of Cook county, and it is admitted that the record of the cause in the circuit court was consumed in the great fire of 1871. On February 1, 1873, said circuit court entered a general order requiring all chancery causes pending previous to the fire of October 9, 1871, to be re-docketed, and the bills or petitions, or copies thereof, to be restored, by the parties interested therein, to files of said court, on or before the first Monday of April following, and if not so restored within the time specified, said causes to be dismissed.

On April 8, 1873, said court entered of record the following general order :

"*Ordered,* that all causes pending in this court, on the chancery side thereof, previous to the fire of October 8 and 9, 1871, and which have not been re-docketed, on motion of parties complainant or defendant, on or before this day, be dismissed at the costs of the complainant or complainants, for want of prosecution, without prejudice, and that each of the defendants have execution therefor."

Notwithstanding this order of dismissal, it appears that a stipulation entitled in the cause, bearing date June 24, 1873, was signed by Hiram M. Chase, solicitor for complainants, and by Heacock, for himself, wherein it was provided "that all papers filed in said cause which had not been destroyed by the great fire of October 9, 1871, be re-filed, and that said cause be re-docketed in this court, costs to abide the event ; and if there should be any deficit of papers, the same might be supplied within reasonable time from the Supreme Court ; in the meantime said cause to be re-docketed in said circuit court." On July 10, 1873, this stipulation was filed in the circuit court, and the court entered an order re-docketing the cause, as in the stipulation provided. On July 3, 1875, the court, on the application of Heacock, granted him leave to file a separate answer, to stand as to him in lieu of the joint answer theretofore filed by him and Garrison. This answer, in effect, admits the deed of 5th of April, 1858, to be fraudulent, and in that respect contradicts his former answer, though both answers are sworn to.

The cause was referred to the master, who, upon consideration of the evidence before him, found that the deed from Heacock and wife to Garrison, of the 5th of April, 1858, conveying the Adams street property, was made without consideration, and to hinder and delay the creditors of Heacock, and, as against complainants, was fraudulent and void. The master also reports, among other things, that on the 19th

of July, 1875, H. M. Chase, solicitor for complainants, and
Andrew Garrison *pro se*, and as solicitor for the other defend-
ants, appeared before him pursuant to notice, and consented
to an adjournment to July 21, 1875, at the same place and
hour, for the taking of testimony, and that Chase and Hea-
cock both testified as witnesses for complainants.    To the
master's report is attached a notice, dated July 17, 1875,
signed by Chase, solicitor for complainants, and served on
Andrew Garrison the same day, to the effect "that on Mon-
day, July 19, 1875, he, the said Chase, would proceed to take
testimony in the cause of *Durand et al.* v. *Heacock et al.*, before
Walter Butler, master in chancery, in pursuance of the order
of reference in said cause." There was also another notice
attached to the master's report, dated July 22, signed and
served in like manner, informing Garrison that the hearing
before the master had been continued to July 23, 1875, etc.

On August 4, 1875, a decree was rendered in the cause,
finding the deed from Heacock and wife to Garrison, for the
property in dispute, was executed without consideration, and
that the same was fraudulent and void as to complainants.
In short, it finds all the material charges in the bill to be true,
and directs Heacock to pay the Durand judgment within ten
days, and in default thereof, orders the premises in contro-
versy to be sold by the master in chancery, and that the
proceeds be applied to the payment of said judgment, interest
and costs, and that in case the property is not redeemed
within the time provided by law, to execute a deed for the
same to the purchaser.

On the 25th of September, 1875, the premises in question
were sold by the master, under the decree, to the complainants
for $2637.76, who received the usual certificate of purchase.
The premises not having been redeemed, the complainants,
on the 5th day of July, 1877, received from the master a deed
therefor.    Under the deed thus acquired, plaintiffs in error
claim to have paramount title to the premises, and are threat-

ening to enforce it as against the present complainant. The latter derives title through Heacock's deed to Garrison, bearing date April 5, 1858, as heretofore stated. Garrison took possession of the property, under his purchase from Heacock, about the time it was made, in 1858, and continued in possession until the 15th of February, 1871, when he and his wife executed a deed of trust upon the property to Benjamin E. Gallup, as trustee, to secure a loan of $12000 obtained by Garrison from George C. Lord, the complainant, who is a resident of Boston, and had no actual knowledge of any claims or liens upon the property except such as were paid off and discharged with proceeds of the loan. On March 4, 1874, the Gallup trust deed was foreclosed by trustee's sale, and George C. Lord became the purchaser of the premises at the sum of $14,010, and received from the trustee a deed therefor, under which he has ever since had possession and now claims title.

In addition to the foregoing facts, which are all matters of record or are established by written documents, about which there is no dispute, it is also shown, by the testimony of Garrison, that at the time the case of *Durand et al.* v. *Heacock et al.* was re-docketed after its reversal in this court, "he had an understanding with Mr. Chase that in the event of its being re-docketed, no claim was to be made upon him personally, or as assignee of Heacock, or as owner of the Adams street property;" that upon being notified, as solicitor for the defendants, to appear before the master to take testimony, he called at the master's office and informed him that Mr. M. Blanchard was acting as attorney for Heacock in the matter; that Chase had so told witness, and that he (witness) would call on Chase and see what he meant; that he did accordingly call on Chase for that purpose, when Chase repeated to him the assurances above mentioned; that in addition to this, Chase expressly stated that "all he wanted was to reach the property that witness had deeded back to Heacock, and

which had been undisposed of by witness while he acted as assignee;" that it was the undisposed of property mentioned in the assignment he was trying to reach, and nothing else; that he (Chase) knew Blanchard was attorney for Heacock, and that the service of notice on witness was mere matter of form, and that he would serve no more notices on him as solicitor; that he (Garrison) fully believed and relied on these statements; that he had no notice from Chase, or from any one else, before the entry of the decree, that it was the purpose to interfere with the Adams street property; that he ceased to act as solicitor for defendants in the suit about the time notice was served on him of re-docketing the case in the Superior Court; that witness never learned of the decree of the 4th of August, 1875, until in December, 1877, when he learned it for the first time from Mr. Peabody; that neither the assignment nor the deed of April 10, 1858, which was really a part of the assignment itself, contained the Adams street property; that the deed of the 5th of the month, which did contain it, had no connection with those instruments; that he paid Heacock for it $3000, etc.

In this summary of his testimony we do not pretend to give the language of the witness, but the substance of it, as we understand it. It is true that Heacock denies the most important statements made by Garrison, but the record before us places him in such a light as to greatly weaken, if not totally destroy, his credit. The conflicting and wholly irreconcilable statements contained in his two sworn answers respecting matters of controlling importance in the suit, find no satisfactory explanation, excuse, or even mitigation, in the record.

For the purposes of this case, therefore, we must assume that the testimony of Garrison is true, in so far as it is not impeached or overcome by evidence other than the testimony of Heacock. Accepting the statements of Garrison as true, there is but little room, if any, to doubt that after the deci-

sion of this court holding the deed and voluntary assignment of April 10, 1858, void as against the Durand judgment, the subsequent prosecution of that case was through the connivance of Heacock, and that it was conducted by Chase, Durand's attorney, in such a manner as to entirely mislead Garrison as to the real purpose for which it was being prosecuted, and as to Lord, it is not pretended that he knew anything about it. Outside of the partially false statements made by Chase to Garrison, for the purpose of throwing him off his guard, there is a variety of circumstances tending to show that the court, in rendering the decree, was unwittingly made an instrument in carrying into effect a dishonorable scheme and palpable fraud. But as we do not propose to place our decision upon this ground, we will not stop to comment more particularly on the fraudulent aspect of the case.

The general reference to the subject, in connection with the facts already stated, is, however, deemed important in its bearing upon the question, whether, at the time Lord's interests attached, there was such a *lis pendens* of the suit as to charge him with notice of the rights of plaintiffs in error under the Durand judgment. If there was not, it is very clear his rights could not be affected by any steps that might thereafter be taken in the case, as he was not a party to it. Nor would the fact that Garrison may have consented to the proceedings, having such object in view, make any difference, for he would be just as powerless to affect Lord's rights in that way as Durand and Heacock. The doctrine of *lis pendens* is founded upon public convenience and necessity. Under proper restrictions it is absolutely essential to the due and successful enforcement of the law in controversies respecting property capable of being transferred from one person to another. Yet this doctrine, like most all others, has its limitations, which are equally essential to the proper administration of justice. Where the doctrine is sought to be enforced, as in the present case, against a *bona fide* purchaser, without

notice, in fact, it is regarded as a hard rule of law, and will not be enforced unless the party invoking it clearly brings himself within it. The principal limitation upon the doctrine is, that "there must be a continuous prosecution of the suit," —that is, the suit must be kept upon the docket, and there should be no such delays in taking the ordinary steps in bringing it to a final hearing as to lead the opposite party or the community at large to suppose the suit has been abandoned. More especially, one will not be heard to invoke this doctrine who has deliberately made false representations to his adversary, for the express purpose of throwing him off his guard, and surreptitiously obtaining a decree against him, as was done in this case, especially when there is good reason to suppose his adversary might, and otherwise would, have successfully resisted the decree.

By what we have just said, we do not wish to be understood as intending, much less holding, that a *lis pendens* will be lost by reason of a destruction of the records of the court or an accidental dropping of a case from the docket, if, in such case, the record is restored or the cause re-docketed within a reasonable time. Every case of this kind necessarily depends largely upon its own circumstances. What would be an unreasonable delay in the prosecution of a suit under some circumstances, so as to defeat or destroy a *lis pendens*, might not be under others. In this case there was a delay of four years and two days between the date of reversal in this court and the filing of the mandate in the Superior Court. Now, what were the circumstances, so far as the property involved in this suit is concerned? Is there anything in the record of the proceedings, after the original decree in the Superior Court and before the execution of the trust deed, to warrant the belief that plaintiffs in error intended to assert any further claim to the Adams street property? We think not. On the contrary, we are of opinion the record discloses the very strongest reasons for concluding that so far as that property

was concerned, all claim to it had been abandoned. Where such is the case, in order to maintain a *lis pendens* the law requires a higher degree of diligence in the prosecution of the suit. It will be remembered, the cause in the Superior Court had been submitted on the sworn answer of Heacock and Garrison alone, which disclosed a complete defence to the bill, so far as the property in question is concerned. The Superior Court, on this answer, sustained the bill as to the property mentioned in the assignment and the deed accompanying it, but said nothing about the deed of the 5th of April or the property conveyed by it. By implication, this was a finding against the complainants as to that property. The complainants prosecuted no appeal from that decree, nor did they otherwise question it. After Heacock and Garrison had taken an appeal from it, they did not even so much as assign cross-errors questioning the action of the court in refusing to find for them as to the Adams street property. And thus stood the record for four years, without even so much as filing in the Superior Court a transcript of the remanding order of this court.

Under these circumstances, we have no hesitancy in holding, as we do, that the delay was unreasonable, and of such a character as to terminate the *lis pendens*. Freeman on Judgments, sec. 202; *Herrington* v. *McCollum*, 73 Ill. 476. Having reached this conclusion, it is unnecessary to notice the other questions discussed in the briefs.

The decree will be affirmed.

*Decree affirmed.*

Mr. JUSTICE SCOTT, dissenting.