FARMERS' LOAN & TRUST CO. v. MERIDIAN WATERWORKS CO. et al.

(Circuit Court, S. D. Mississippi, E. D. April 28, 1905.)

No. 42.

1. MORTGAGES—RIGHTS OF MORTGAGEE—GROUNDS FOR APPOINTMENT OF RECEIVER.

Under a mortgage given by a water company on all of its property to secure bonds, which conveys the legal title, the mortgagee has the right to ask the appointment of a receiver to prevent the property from being wasted, or its value impaired, although there has been no default in the payment of either interest or principal of the debt; and a decree which deprives the company of the right to longer maintain and operate its plant is sufficient ground for such appointment.

2. CONSTITUTIONAL LAW—FRANCHISE—CONTRACT PROTECTED FROM IMPAIRMENT.

A franchise granted to a water company to maintain pipes in the streets of a city to supply the inhabitants and the city with water for a term of years constitutes a contract, which is protected from impairment by the Constitution of the United States.

3. JUDGMENT—RIGHTS OF MORTGAGEE—CONCLUSIVENESS OF JUDGMENT AGAINST COMPANY.

Such a grant also creates an easement which may be mortgaged, and the mortgagee cannot be deprived of such security by a decree against the company annulling the franchise, entered in a suit begun after the mortgage was given, and to which the mortgagee was not a party.

4. LIS PENDENS—EFFECT OF AGREEMENT FOR EXTENSION PENDENTE LITE.

A water company having a franchise from a city to construct and maintain waterworks therein executed mortgages to a trustee covering all of its property and franchises to secure bonds with the proceeds of which it built its works and made extensions. Subsequently the city brought a suit against the company to annul its franchise, and pending such suit the company made a new issue of bonds to make extensions ordered by the city, secured by another mortgage to the same trustee, which also provided for the renewal and extension of the liens of the prior mortgages. At the time

neither the trustee nor holders of the bonds had actual knowledge of the pending suit. *Held*, that such provision for renewal and extension of the prior mortgages did not operate to discharge such mortgages, which still remained of record, nor to revest the title conveyed thereby so as to affect the trustee with his pendens with respect to his rights and those of the bondholders thereunder in the mortgaged franchise, and subject them to a decree subsequently rendered in the suit annulling such franchise.

In Equity. On demurrer to bill.

Brown & Spurlock, for complainant.

Miller & Baskin, S. A. Witherspoon, and Ethridge & McBeath, for defendants.

NILES, District Judge. This is a suit in equity, brought by the complainant, as trustee under several mortgages executed by the Meridian Waterworks Company and the city of Meridian for the purpose of preserving for the benefit of the bondholders represented by it the property included in the mortgages, and to have the complainant's rights therein declared as against both of the defendants. It is alleged, among other things not necessary to be stated: That on the 20th day of July, 1886, the city of Meridian contracted with W. S. Kuhn, his associates and assigns, for the erection and maintenance of a system of waterworks for the purpose of supplying to the said city and its inhabitants water for domestic and public uses. The bill and contract exhibited therewith describe the works as originally designed, and which have since, under the directions of the city, acting in accordance with the provisions of the contract, been largely increased. After said contract was duly executed, it was assigned to the Meridian Waterworks Company, which, in accordance with its terms, erected the works and had ever since operated and maintained the same, and was still in possession thereof, but with no right to continue their operation, as had been decreed in a suit brought against it by the city of Meridian, wherein the contract aforesaid was annulled, and as a result of which the defendant city was claiming that its codefendant had no longer the right to use its streets to maintain said works, or to collect from it the hydrant rentals which said city had agreed to pay for and during the whole period of said contract. That said contract granted to said Kuhn, his associates, successors, and assigns the right to construct said works, and to use the streets and public places of the city to maintain and operate the same for a term of 25 years from the date when completed and accepted. That on November 1, 1886, the Meridian Waterworks Company, in order to secure the necessary funds to build said works, executed and issued bonds to the amount of $150,000, and secured the payment of the same by a conveyance to the complainant of said works and all franchises, rights, and contracts incident thereto; and on July 1, 1892, it executed and issued bonds in the additional amount of $100,000 to pay for the extensions of its mains and pipe lines, as directed by the defendant city, and secured this loan by a mortgage of the same date, again conveying the same property, rights, and franchises to the complainant. That in September,

1898, the city began a suit in the chancery court of Lauderdale county, Miss., against the Meridian Waterworks Company, alleging that the water then being supplied its inhabitants was not pure and wholesome and suitable for drinking purposes, and that the pressure afforded for fire protection was not such as the contract required. This bill, it is alleged, was not answered until November, 1900, and no steps were taken for the purpose of bringing it to a hearing until February, 1902. In the meantime the defendant city had directed the laying of a large amount of additional mains, and by its legislative boards had authorized the dismissal of the suit previously brought against it; and the Meridian Waterworks Company for the purpose of securing the necessary funds to make these extensions, and to pay for other improvements, had borrowed the additional sum of $100,000, secured by a mortgage executed to the complainant on November 1, 1899, and in which provision was also made for renewing and extending the lien of the two issues of bonds secured by the mortgages executed in 1886 and 1892. That at the time this mortgage was executed neither the complainant nor the bondholders represented by it knew of the pending of the said suit in the state court, and would not have agreed to renew or extend the prior issues of the bonds if they had had such knowledge. That after the Meridian Waterworks Company had completed all of the extensions ordered by the city, and had, with the city's knowledge and consent, added other extensive improvements to its plant, costing nearly the sum of $140,000, the city, through its counsel, began the active preparation of its suit for a hearing, and it was heard with the result that the contract was annulled by a decree of the chancellor, which decree was, on appeal to the Supreme Court of the state of Mississippi, affirmed. That the defendant city was claiming since the rendition of said decree that the Meridian Waterworks Company had no longer any claim upon it for hydrant rentals, or any right to use and occupy its streets for the purpose of maintaining its plant, under the contract which had been previously assigned to the complainant as security for the sums borrowed as aforesaid. That the defendant the Meridian Waterworks Company, under the several mortgages executed to the complainant, had agreed to keep the property conveyed as security free from liens and incumbrances of all kinds, and to so manage it as not to impair its value as security for the debts described in the several mortgages; but that it had, by the decree aforesaid, been deprived of its power and right to manage said property, or to collect and apply its income from any source, or to maintain the same; and that, if it was deprived of the possession of this property, it would be utterly destroyed and rendered valueless as security for the outstanding bonds. That said mortgagee company had no other property, and was by said decree rendered insolvent, and unable to pay its outstanding bonds, or to preserve the property by which they were secured. The relief sought as against said defendant was that a receiver be appointed to take possession of said property, and to operate and maintain the same for the benefit of the bondholders, and, as an incident to said proceeding, that the rights of the plaintiff as against the defendant city be declared.

To this the mayor and boards of councilmen and aldermen of the city of Meridian have demurred, and assigned in substance the following defenses: (1) The bill fails to show that any legal or equitable rights of the plaintiff have been violated, or threatened to be violated. (2) That the plaintiff has no legal or equitable right or title authorizing it to maintain the bill. (3) That the decree of the state court is valid, and no reasons are assigned for declaring the same void, and that the plaintiff is bound and concluded thereby. (4) That the bonds issued under the mortgages executed in 1886 and 1892 have been exchanged for the bonds issued under the mortgage executed in 1899, and were therefore extinguished, so that the plaintiff had no rights in said property except as conveyed to it under the mortgage last named. (5) That the right of the plaintiff to collect hydrant rents due from the city is a legal action, and will not accrue at all unless necessary to pay interest upon the outstanding bonds, which is not now in default; and that the plaintiff, having no greater rights than the waterworks company in said contract, and the same having been annulled, no suit, either legal or equitable, can be maintained to collect said rents.

After the Meridian Waterworks Company had conveyed its property and the franchises incident thereto to the plaintiff to secure the bonds issued under its several mortgages, the water company had only an equity in these properties, and the right to continue in possession of the same, subject to the terms and limitations stated in the deeds of conveyance. At the same time, and under the same conveyances, the plaintiff held the legal title for the benefit of the bondholders, with the right to take possession of the property whenever it became either necessary to sell it or to preserve it from waste and loss. The mortgagor company having no other property besides that conveyed, the trustee had in fact a greater interest in the preservation of the property than in its sale. If the mortgagor had voluntarily abandoned its right of possession, and left the property to go to waste, or if its existence as a corporation had been terminated at the suit of the state, so that it could not have performed its duties in caring for the property under its mortgage, in either event the right of the trustee to take possession would have accrued. The result would not be different where it was disabled in the performance of these duties by any other character of decree; and when it is necessary to preserve the property the trustee may ask the appointment of a receiver to prevent the subject-matter of his mortgage from being impaired and wasted, without waiting until there has been a default, either in the payment of the principal or of interest on the indebtedness secured. Brassey v. New York N. E. R. Co. (C. C.) 19 Fed. 663–669.

It is alleged in the bill of complaint that a decree of the chancery court of Lauderdale county, Miss., in a suit brought by the city of Meridian against the Meridian Waterworks Company, and affirmed by the Supreme Court of the state of Mississippi, had adjudged that the waterworks company has no longer any interest in the contract under which the waterworks were constructed and being

maintained.  The practical effect of this decree was to destroy the water company's right to possess and operate the plant which it had conveyed to the plaintiff.  It had no power thereafter to collect and use the income of the company from any source to pay the taxes annually assessed against the property, to continue its value as a going concern, or to do any act necessary to prevent it from being entirely wasted and destroyed.  Under both the expressed and implied conditions of the mortgage executed by this company, the trustee had an undoubted right to take possession of this property, and save it for the benefit of the bondholders, who were most vitally interested in its continued existence.  But the defendant city contends that the decree of the state court which annulled the contract as to the waterworks company is also conclusive and binding as to the interest of the trustee, and that the latter is equally, under said decree, without the right to use the streets of said city for the purpose of maintaining and operating the waterworks.  But this decree can have no such effect.  In a case involving the same question the Circuit Court of Appeals for the Sixth Circuit, in Louisville Trust Company v. City of Cincinnati, 76 Fed. 296, 22 C. C. A. 334, has said:

"That these street easements originate in certain statutes of the state of Ohio and certain ordinances of the city of Cincinnati does not affect their character as contracts entitled to the protection afforded by the Constitution of the United States.  The grant of a right to enter upon and occupy a public street with the necessary tracks, poles, wires, and equipment of an electric street railway is a grant of a typical easement in property, and as such is a contract right, capable, in the absence of express restrictions, of being sold, conveyed, assigned, or mortgaged, and is therefore a right entitled to all the protection afforded other property or contract rights.  Such a grant as we had occasion to decide in Detroit Citizens' Street Ry. Co. v. City of Detroit, 22 U. S. App. 570–580, 12 C. C. A. 365–372, and 64 Fed. 628, 635, 26 L. R. A. 667, may be for a time longer or shorter than the corporate life of the company receiving it;  the duration of the estate being dependent upon the terms of the grant and the power of the grantor to make it.  We then said there was nothing in the nature of the property rights involved in a grant of an easement in the streets for street railway uses which distinguishes it from the property acquired by a corporation in the exercise of its franchises."

In Railroad Company v. Delamore, 114 U. S. 501, 5 Sup. Ct. 1009, 29 L. Ed. 244, it was held that a grant by a municipal corporation to a railway company of a right of way through certain streets of the city, with the right to construct its railway thereon, and maintain and occupy them in its use, is a franchise which may be mortgaged, and would pass to a purchaser at a sale under a foreclosure of the mortgage.  There is nothing in the law of Ohio which in any way contravenes the right of a railway company to mortgage its street easements, or which would prevent such easements from passing to a purchaser at foreclosure sale.  It therefore follows that the complainant under the mortgage mentioned has acquired the substantial right in the street easements of the mortgagor company, and cannot be deprived of this security by a proceeding directly impeaching their validity and duration without being made a party thereto.  It is true that a grantor can transfer no greater estate or interest than he has, and that the title in the grantee's

hands must be subject to all the burdens and limitations which rested upon it at the time of the conveyance. But in Keokuk & W. R. Co. v. Missouri, 152 U. S. 301–314, 14 Sup. Ct. 592, 597, 38 L. Ed. 450, Mr. Justice Brown, in delivering the opinion of the court, said:

"While a mortgagee is privy in estate with a mortgagor as to actions begun before the mortgage was given, he is not bound by judgments or decrees against the mortgagor in suits begun by third parties subsequent to the execution of the mortgage, unless he, or some one authorized to represent him, like a trustee of a mortgage bondholder, is made a party to the litigation, although it would be otherwise if the mortgage were executed pending the suit or after the decree."

Hassall v. Wilcox, 130 U. S. 493, 9 Sup. Ct. 590, 32 L. Ed. 1001; Southern Bank & Trust Co. et al. v. Folsom et al., 75 Fed. 929, 21 C. C. A. 568.

The mortgage under which the complainant was trustee was executed before the suit in the state court was begun, and we think there is no reason why a mortgage of property interests, such as the street grants claimed by the mortgagor company, should be concluded by a decree to which only the mortgagor was a party, than if the mortgage had been on a different character of estate. See Baltimore Trust and Guarantee Co. v. Mayor, etc., of City of Baltimore (C. C.) 64 Fed. 153.

In the more recent case of Columbia Ave. Sav. Fund, etc., Co. v. City of Dawson (C. C.) 130 Fed. 152, Judge Pardee, of this circuit, held that a mortgagee was not privy to or bound by a judgment against the mortgagor rendered in a suit commenced after the mortgage was given, and to which he was not a party. This case was, on appeal, reversed upon another point, but the above holding was in no wise disturbed.

Demurrant relies upon the case of New Orleans Water Works Company v. Louisiana, 185 U. S. 342, 22 Sup. Ct. 691, 46 L. Ed. 936, but this case involved nothing more than the right of a state to revoke a charter of incorporation granted under its laws, or to recall the right to be a corporation, which belonged to the stockholders of the corporation, a right that was not assignable, and in which the creditors of the corporation could have no interest. The creditor has the right and does rely for the satisfaction of his debt against the corporation upon the appropriation or sale of whatever property of any character the corporation may possess. In effecting a satisfaction of his debts, either by sale under execution or in the foreclosure of a mortgage, the property passes from the corporation, and purchasers at a foreclosure sale do not take the right to be a corporation which belonged to the stockholders constituting the corporation when property was sold. When, therefore, the decree of the court terminated the corporate existence of the New Orleans Waterworks Company, the rights of its creditors, as said by the court in that case and cases cited, were not affected. The other rule applies where the decree operates against property belonging to the corporation itself that is assignable in its character, and is subject to appropriation in the payment of whatever debts the company may owe.

There are a great number of cases holding that grants by municipal corporations to railway companies, water companies, and other such public corporations to use streets in the construction and operation of their works constitute easements or property which are assignable in their nature, and as such within the protection of the Constitution of the United States. Some of the cases are cited in the opinion of the court in Louisville Trust Company v. Cincinnati, before referred to, and the decision in that case resulted from the distinction stated.

It was declared by Mr. Justice Bradley in Memphis and Little Rock Co. v. Railroad Commissioners, 112 U. S. 609, 5 Sup. Ct. 299, 28 L. Ed. 837, in which case he stated:

"The franchise of being a corporation need not be implied as necessary to secure to the mortgage bondholders, or the purchaser at a foreclosure sale, the substantial rights intended to be secured. They acquire the ownership of the railroad, and the property incident to it, and the franchise of maintaining and operating as such. And the corporate existence is not essential to its use and enjoyment. All the franchises necessary or important to the beneficial use of the railroad could as well be exercised by natural persons. The essential properties of corporate existence are quite distinct from the franchises of the corporation. The franchise of being a corporation belongs to the corporators, while the powers and privileges vested in and to be exercised by the corporate body as such are the franchises of the corporation. The latter has no power to dispose of the franchise of its members, which may survive in the mere fact of corporate existence after the corporation has parted with all its property and all its franchises."

In State v. Water Company, 61 Kan. 547, 60 Pac. 337, it was held that, notwithstanding the fact that the charter of the mortgagor company had been forfeited at the suit of the state, the purchaser at a foreclosure sale took and had the right to operate franchises granted by the city for the construction and use of the waterworks involved. The reasons for this conclusion are clearly stated in the syllabi of the case:

"(1) Corporations—Franchise from City—Right to Mortgage. A corporation organized under the laws of Kansas for the purpose of furnishing the inhabitants of a municipality with water had granted to it, by an ordinance of the city, the right to occupy its streets for the laying of pipes, erecting hydrants, and other privileges usually enjoyed by water companies, for the period of twenty years. The company executed a mortgage on all rights, privileges, and franchises granted to it by the state, together with all its property used in and about the maintenance of a waterworks plant, and income, rents, profits, and emoluments derived therefrom, including revenue from all sources, to secure the payment of certain bonds. Held, that the mortgage created a valid incumbrance upon its property, including all rights to supply the city and its inhabitants with water derived under the ordinance mentioned.

"(2) Secondary Franchises may be Alienated. Corporations cannot sell or mortgage those franchises received from the state which confer power upon them to exist as artificial bodies, but those franchises denominated as secondary, which include the privileges granted by a city to a water company with the right to take tolls, etc., may, under our statute, be lawfully alienated or incumbered."

In City Water Company v. The State, 88 Tex. 600, 32 S. W. 1033, the statement of the case showed that before the institution of the quo warranto proceeding a receiver had been placed in possession of the property of the company by the United States Circuit Court for the Western District of Texas. In the suit brought

by the state the water company pleaded this fact in abatement, but the plea was overruled for the reasons thus stated by the court:

"The franchise or right to be a corporate body is a right vested in the stockholders, and not in the corporation itself; and the property or rights of the stockholders are not affected by the receivership or by any action of the court with reference thereto. Where a corporation is placed in the hands of a receiver, and is not dissolved, although it may be insolvent in fact, after the property has been sold to another person, such corporation may reacquire the property which formerly belonged to it by purchase from the person who bought it of the receiver, and will take it free from claims against the receiver to same extent as this vendor held it so exempt."

It was further said:

"If the receiver cannot convey to any person the right to exist as a corporate body by virtue of the charter of appellant, then we cannot understand how the forfeiture or destruction of that existence can affect legally the rights of property in the receiver. If the receiver were to sell the property, the corporation still existing, the purchaser would acquire all the property rights that the corporation has, with all such franchises and easements as were necessary for the use of the property. Threadgill v. Pumphrey, 87 Tex. 573, 30 S. W. 356. If the corporation be dissolved pending the receivership, the receiver would continue to enjoy the easements of the corporation, and, upon sale being made of the property, its franchises necessary to the use of the property, such as the right to use the streets, granted by the city, would vest in the purchaser. If the charter of appellant corporation be forfeited, and the receiver shall sell the property of the corporation, the purchaser would acquire all the rights of every kind that could be conveyed if the corporation were still in existence. Therefore we conclude that as a matter of law the judgment of the court declaring a dissolution of the corporation can have no effect upon the value of the property, nor upon the rights of the receiver, nor can it in any way impair or interfere with the jurisdiction of the United States Circuit Court."

See Fiske's Estate, 111 N. Y. 66, 19 N. E. 233, 2 L. R. A. 387.

A street railway company had been granted the right to occupy and use certain parts of Broadway, in the city of New York, and the franchise thus acquired was assigned to secure the mortgage indebtedness of the company. Subsequent to this the Legislature of the state of New York passed an act dissolving the street railway corporation. The claim in behalf of the state was that the dissolution of the corporation operated to terminate the rights of the corporation and of the trustee representing the bondholders to use the street franchise, but it was held:

"That, while the annulling act was constitutional and valid, its effect was only to take the life of the corporation; that the corporation took through its grant from the city an indefeasible title in the land necessary to enable it to construct and maintain a street railway in Broadway, and to run cars thereon, which constituted property; that all its property including street rights or franchises, also its mortgages and valid contracts, including the traffic contract, survived its dissolution."

In this connection it may be said that creditors accepting assignments of such street easements as security for their debts take them subject to forfeiture on a failure to comply with the conditions upon which they were granted. Farmers' Loan & Trust Company v. Galesburg, 133 U. S. 156, 10 Sup. Ct. 316, 33 L. Ed. 573. But it cannot be said that the assignee's interest can be forfeited and annulled except upon due process of law and a hearing, as was ac-

corded in that case.  What was said by the Court of Appeals of New York in People v. O'Brien, 111 N. Y. 36, 18 N. E. 692, 2 L. R. A. 255, 7 Am. St. Rep. 684, is pertinent in this connection:

"The contention that securities representing a large part of the world's wealth are beyond the reach of the protection which the Constitution gives to property. and are subject to the arbitrary will of successive legislatures, to sanction or destroy at their pleasure or discretion, is a proposition so repugnant to reason and justice, as well as the tradition of the Anglo-Saxon race in respect to security of the rights of property, that there is little reason to suppose that it will ever receive the sanction of the judiciary; and we desire in unqualified terms to express our disapprobation of such a doctrine.  Whatever might have been the intention of the Legislature, or even the framers of our Constitution, in respect to the effect of the power of repeal reserved in acts of incorporation upon the property rights of a corporation, such power must still be exercised in subjection to the provisions of the federal Constitution."

In conclusion of this proposition it is not inappropriate to say that the bondholders whose money had been borrowed and used with the consent and acquiescence of the city in the original construction and all subsequent extensions and improvements of the waterworks system were the parties most vitally interested in the contract, which constituted the very life of these works.  In the absence of any constitutional provision guarantying the protection of vested property interests, the simple dictates of common justice would require that these parties should be heard before destroying that property upon which they depended for a return of their money.  The investment was a large one, and was necessarily made upon faith in the city's implied promise not to revoke the franchise without a fair and impartial hearing being accorded to all parties interested therein.

The bill filed in this case does not question the validity of the decree announced in the state court, or seek to review the same in any respect whatever.  On the contrary, it admits that the decree has canceled the contract so far as the water company is concerned, and deprived that company of the right to further maintain and operate the works under the contract.  But the claim is—and it is a substantial one—that the Constitution of the United States stands in the way of the operation of this decree against the interests of the plaintiff, who was not a party to the suit in which it was pronounced.

In American Water Works & Guarantee Co. v. Home Water Co. (C. C.) 115 Fed. 172 to 178, it was held that, where a municipal corporation, by contract entered into by legislative authority, grants the use of its streets for waterworks, the grantee could not be deprived of property thus acquired without due process of law; and this constitutional protection extended to mortgagees to whom the rights had been conveyed.  The constitutional provision guarantying due process of law avoids all decrees operating on the rights of parties who were not given their day in court.  See Burns v. R. Co. (C. C.) 15 Fed. 183; Ex parte Ulrich (D. C.) 42 Fed. 588, 597; Chicago, B. & Q. R. Co. v. Chicago, 166 U. S. 226, 17 Sup. Ct. 581, 41 L. Ed. 979; Baltimore & O. R. Co. v. Voigt, 176 U. S.

511, 20 Sup. Ct. 385, 44 L. Ed. 560; Simon v. Craft, 182 U. S. 427, 21 Sup. Ct. 836, 45 L. Ed. 1165.

It only remains to be considered whether the trustee in this case had acquired its title prior to the time of the institution of the suit in the state court, or whether it was an intruder, and acquired its interests after the suit was begun. It is not claimed that the Meridian Waterworks Company had not, prior to the institution of that suit, executed the mortgage dated November 1, 1886, for the purpose of securing $150,000 in bonds, and the mortgage dated July 1, 1892, for the purpose of securing $250,000 in bonds, and that these mortgages were both in force and of record at the time the bill was filed in the chancery court of Lauderdale county, Miss. The contention on this point is that the execution of the mortgage dated November 1, 1899, providing for an additional loan of $100,-000, which had then become necessary, and to continue therein the lien of the prior issues of bonds by their renewal, had the effect to extinguish the two preceding liens, and to deprive the plaintiff of the benefit of the rule announced in the cases already cited. The effect of such a renewal or extension is thus stated by the Supreme Court of the United States in Bernhisel v. Firman, 22 Wall. 170, 22 L. Ed. 766:

"There is another ground upon which a judgment for the appellant may well be placed. As before remarked, the new securities were intended to take the place of the prior ones. If the new ones are adjudged invalid, the cancellation and surrender of the prior ones will have been without the shadow of a consideration. If the cancellation and surrender are permitted also to stand, Bernhisel will have lost his debt without fault on his part, and contrary to the interest of both debtor and creditor in making the change of securities. Bernhisel will be in no better situation than if he had given up the old securities upon being paid in coin or currency which he believed to be good, but which turned out to be counterfeit. Where there is a failure of consideration and fraud or mistake in such cases, a court of equity will annul the cancellation and revive the securities. Upon being so revived, they resume their former efficacy. This is an ordinary exercise of the jurisdiction of such tribunals. It is a rule in equity that an incumbrance shall be kept alive or considered extinguished, as shall most advance the justice of the case."

It has been declared in Young v. Sharer, 73 Iowa, 555, 35 N. W. 629, 5 Am. St. Rep. 701, that a new mortgage would be regarded as but a renewal of the old, where necessary to displace an intervening lien. In Burns v. Thayer, 101 Mass. 426, and Pouder v. Ritzinger, 102 Ind. 571, 1 N. E. 44, that the taking of a new note and mortgage by a mortgagee from a mortgagor for the payment of the same debt upon the same land will not discharge the lien of the first mortgage, but such lien will be continued in the new mortgage, even though the first be canceled. In Shaver v. Williams, 87 Ill. 472, the contest was between the holder of the second mortgage and the owner of another mortgage executed subsequently, but in renewal of one that was prior in date to the second. As to the rights of the parties thus situated, the Supreme Court said:

"The conveyance or release of all the rights held by the complainant in and to the premises to the mortgagor and the execution and delivery of a new mortgage were simultaneous acts, and no intent was shown to change the

relative rights of the parties by the change of the form of the security for the debt. It is a principle well established that equity always looks to the substance, and not to the form, of the transaction, to determine its validity. Under this rule no good reason can be shown why appellant should have priority. When he made the loan and accepted a mortgage the record disclosed the fact that appellee had a prior lien. This record was constructive notice to him and all others of appellee's rights, and whatever interest he acquired in the premises was subordinate to that held by appellee. Appellant has in no manner here been misled or deceived; and under such circumstances to give him priority of lien, from the fact alone that appellee canceled of record one mortgage, no portion of his debt having been paid, and at the same time accepted another mortgage deriving no substantial advantage which he did not previously have, would be neither just nor equitable."

Courts of equity have gone to the extent of holding that, where a mortgagee has accepted a second mortgage in renewal of the first, which was surrendered and canceled, in the absence of laches or other disqualifying fact the mortgagee would be restored to his original position to defeat intervening liens. See Hutchinson v. Swartsweller, 31 N. J. Eq. 205; Campbell v. Trotter, 100 Ill. 281; Jones v. Parker, 51 Wis. 219, 8 N. W. 124.

In Cansler v. Sallis, 54 Miss. 449, the Supreme Court of Mississippi said:

"There can be no doubt that under the allegations of the bill the intention between the parties was to substitute the second note and trust deed for the first as a mere change in the form of the indebtedness for some fancied convenience to the parties. Whenever this is the case, a court of equity will look through the form to the substance, and keep alive the original security, if justice require it.' Dillon v. Byrne, 5 Cal. 455; Swift v. Kraemer, 13 Cal. 526; Flower v. Elwood, 66 Ill. 438; Nichols v. Overacker, 16 Kan. 54."

And again, in Sledge, McKay & Co. v. Obenchain, 58 Miss. 673:

"It is a well-established principle that courts of equity, where there has been a mere change in the form of the indebtedness or security, and where the rights of innocent third parties are affected, will keep alive the original security to enforce the very right and justice of the case. Thompson v. Hunter, 55 Miss. 656; Cansler v. Sallis, 54 Miss. 446. The evident intention of complainants was to retain a security upon the identical property named in the first mortgage to secure the identical debt thereby secured, and the mere fact that a new mortgage was executed to secure that debt and another and the old security surrendered does not preclude them from insisting upon the security afforded by the original mortgage."

In Hopkins v. McLaren, 4 Cow. 667-679, the court said:

"The doctrine of lis pendens applies only where a third person attempts to intrude into a controversy by acquiring an interest in the matter in litigation pending the suit."

The reason of the rule was thus stated:

"The reason of the rule is that, if a transfer of interest pending a suit were to be allowed to affect the proceedings, there would be no end to litigation, for as soon as a new party was brought in he might transfer to another, and render it necessary to bring that other before the court; so that a suit might be interminable. But this reason has no application to a third person whose interest subsisted before the suit was commenced, and who might have been made an original party."

This was said in a case where a mortgagee had made a conditional assignment of his interest in a mortgage and was reinvested with title by breach of the conditions in the contract of assignment.

And it was held that he was not precluded by a judgment obtained by the mortgagor against the assignee before the reassignment of the mortgage.

The application of the rule was denied in Hammond v. Paxton, 58 Mich. 398, 25 N. W. 321, where the party sought to be affected with notice by lis pendens held an interest by an unregistered mortgage of prior date to the institution of the suit; and in Hunt v. Haven, 52 N. H. 162, where it was held that a second mortgagee was not bound by a decree obtained by the first mortgagee against the mortgagor in a suit instituted after the second mortgage was executed.

As already stated, the facts clearly show that the plaintiff in this case did not secure its interest in the property in question by intruding in the litigation then pending, but that it represents bondholders from whom was borrowed the money to pay for the original construction of the waterworks, and to pay for all subsequent extensions and improvements added thereto. The first two mortgages, which admittedly antedate the institution of the suit in the state court, still stand upon the records uncanceled, and it was not the intention of the mortgagor and the plaintiff in the last mortgage executed to do more than renew and continue the lien of the prior issues of the bonds. It is not necessary for this court to hold, as it would be warranted in doing on the authorities cited, that the liens of the preceding mortgages should be revived in order to promote the ends of justice. Those liens were never extinguished, and it must be held that the plaintiff is within the rule hereinbefore stated.

If necessary to do so, it might be held that at the time the last mortgage was executed there was no such prosecution of the suit that had been filed in the state court as would be necessary to constitute notice by lis pendens. In Johnston v. Standard Mining Co., 148 U. S. 370, 13 Sup. Ct. 589, 37 L. Ed. 480, it was said:

"It has frequently been held that the mere institution of a suit does not of itself relieve a person from the charge of laches, and that, if he failed in the diligent prosecution of the action, the consequences are the same as though no action had been begun."

The rule will not be applied, especially where it appears that the delay was accompanied by circumstances or representations from which it could be reasonably inferred that the suit had been abandoned, or which were calculated to throw the adversary and parties dealing with him off their guard. Durand v. Lord, 115 Ill. 610, 4 N. E. 483; Davis v. Bonar, 15 Iowa, 171.

The primary relief sought by the bill of complaint was the appointment of a receiver to take, hold, and maintain the property covered by the several mortgages executed to the plaintiff. The collection of the hydrant rents due from the city under the contract existing between it and the water company is not an essential object of the bill. Whether or not the city will be called upon to pay the amount of rents due from it will depend upon the necessity for collecting the amount thus due for the purposes stated in the contract and mortgage and upon the conditions therein stated.

It results from these views that the demurrer will be overruled.